## DABNEY v. CITY OF SOUTH HOUSTON.
### No. 10146.

Court of Civil Appeals of Texas.  Galveston.
March 9, 1936.

Rehearing Denied April 16, 1936.

J. F. Dabney and Walter F. Brown, both of Houston, for plaintiff in error.

Kirby Fitzpatrick, of Houston, and J. E. McWhorter, of South Houston (Sewall Myer, of Houston, of counsel), for defendant in error.

PLEASANTS, Chief Justice.

This suit was brought by plaintiff in error against the defendant in error to recover damages alleged to have been sustained as the result of a breach by defendant in error of a written contract between the parties.  For brevity, the parties will be hereinafter designated plaintiff and defendant, since such designation cannot result in confusion as it coincides with the position of the parties in the court below.

The trial in the court below with a jury resulted in a verdict and judgment in favor of defendant.

Plaintiff's petition alleges in substance that on or about November 11, 1930, he and the defendant, a municipal corporation acting by and through T. E. Waite, the mayor of defendant city, who was expressly authorized so to act by resolution of the city counsel, entered into a written contract whereby defendant employed plaintiff to collect for it, by suit or otherwise, all delinquent taxes, with the interest, penalty, and delinquency costs accrued thereon, shown to be delinquent on the tax records of said city of South Houston, against all lands and lots situated within the corporate limits of said city of South Houston, for all years down to and including the year 1929, and authorized plaintiff to file and prosecute suits therefor in the name of the said city of South Houston.

"(3) That plaintiff was at said time a practicing attorney, duly authorized and qualified to accept such employment, and that plaintiff thereafter entered upon the performance of said contract and pursued the work of his employment thereunder with reasonable diligence, using such care as a competent attorney would use to obtain valid tax judgments and sales thereunder for all taxes against said lands and lots, until, towit, on or about the 12th day of June, 1931, when the defendant, acting by and through W. W. Meador, its then mayor, duly elected and qualified, instructed the district clerk of Harris County to file no suits in the name of the City of South Houston until notified by him in writing.  That, as a result of said instructions, the clerk of the district court of Harris County has refused, and still refuses, to file suits for said taxes, when presented by plaintiff, as provided for in said contract, and that thereby the defendant refused to permit, and still refuses to permit, plaintiff to perform the work of said contract provided for, and has thereby breached the same.

"(4) That by the terms of said contract plaintiff is to receive his compensation

for services rendered thereunder from the Tax Collector of the defendant immediately after the regular meeting of its City Council each month for all taxes collected during the preceding month, but that the defendant has failed and refused, and still fails and refuses, to pay plaintiff his said compensation to which he is entitled for collections since the execution of said contract, and that thereby the defendant has breached its contract.

"That by the action of the defendant in preventing plaintiff from performing the work under his contract by filing suits for the taxes due defendant, as alleged in paragraph 3 of this petition, and refusing to pay plaintiff the compensation for his work under same, as alleged in paragraph 4 hereof, the defendant has breached its said contract with plaintiff, and plaintiff is entitled to recover of the defendant as damages therefor the amount that he would have made by a performance of said contract, which plaintiff was able and willing to do, and until prevented by the defendant as herein alleged, was pursuing the work of so doing.

"That by the terms of said contract plaintiff was to receive as compensation for his services thereunder twenty-five (25) per cent of the taxes, interest and penalty collected in the course of the performance of the work thereunder, and in addition thereto plaintiff was to receive, when collected, the attorney's fees provided by law for the prosecution of suits for delinquent taxes."

That at the time defendant breached its contract with plaintiff, as before alleged, there was due the defendant city the sum of $13,181.12 delinquent taxes, interest, and penalties, which plaintiff would have collected if he had not been prevented by the acts of defendant before alleged, and his portion of 25 per cent. of this amount would have amounted to the sum of $3,295.-20, which amount he asks to recover as damage.

He further alleges that in addition to the above-mentioned 25 per cent., he would have earned in suits filed by him the attorney's fees allowed by law.

The petition then alleges in detail various items of damages plaintiff has sustained by defendant's alleged breach of contract and prays for recovery in the sum of $10,000. and for equity and general relief.

The defendant answered by general and special demurrers, the nature of which will be hereinafter shown as far as may be necessary in determining the questions presented by the record.

Defendant further denied generally and specially all of the allegations of the petition, and pleaded specially, in substance, that plaintiff was not a competent lawyer to handle the collection of delinquent taxes for defendant, and because of such incompetence had caused defendant to suffer loss and damage which justified it in refusing to permit him to file further suits for collection of taxes.

The cause was submitted to the jury upon special issues, in response to which the jury found:

(1) That the defendant in instructing the district clerk of Harris county on or about June 12, 1931, to file no further suits for taxes until further notice by the defendant city, and the keeping of the instruction in effect, did not prevent the plaintiff from performing his work under his contract with defendant.

(2) That the plaintiff failed in the performance of his contract with defendant to use such care in the collection of delinquent taxes for the defendant city as a competent attorney would have used, under the same or similar circumstances.

(3) That the failure on the part of the plaintiff to exercise such care was sufficient cause to justify the city council to order the district clerk to receive no further tax suits on behalf of defendant city until further notice.

(4) That plaintiff Dabney would not have caused the collection of any sum of money due the city as delinquent taxes by any contested suits that he would have filed from June 12, 1931, to November 11, 1932.

(5) That plaintiff would not have filed any suits for the collection of delinquent taxes from June 12, 1931, to August 23, 1931.

(6) That plaintiff would have collected no money from the various taxpayers as attorney's fees upon any contested suits that would have been filed by him for such taxes if the stop order of June 12, 1931, had not been issued.

(7) That plaintiff, prior to June 10, 1931, had sent out under his contract with defendant 460 notices to delinquent taxpayers.

(8) That if defendant had not notified the district clerk not to file further suits, no additional notices to taxpayers would have been sent out by plaintiff prior to August 23, 1931.

(9) That the defendant city would have collected no money for the notices sent out by plaintiff to delinquent taxpayers prior to June 10, 1931, if the district clerk had not been instructed not to file further suits for such taxes.

(10) That no money for such notices sent out prior to August 23, 1931, would have been collected if the stop order had not been issued.

■ The plaintiff by appropriate assignments and propositions complains of the submission of the question first propounded to the jury, and the answer of the jury thereto above set out, on the ground that there is no evidence raising such issue.

These assignments must be sustained. The contract entered into by plaintiff and defendant on November 11, 1930, by its express terms employed plaintiff to collect for defendant all delinquent taxes with interest and penalties due defendant for the year 1929 and prior years, and authorized plaintiff to file and prosecute suits therefor in the name of the defendant. Plaintiff was to pursue the work of such collection with reasonable diligence and was to complete the work, except the prosecution of contested suits, within two years from the date of the contract. Plaintiff was to receive for his services 25 per cent. of the amount collected by him, and in addition thereto the attorney's fees allowed by law in suits for collection of taxes.

About Christmas, 1930, the defendant furnished plaintiff with statements of the delinquent taxes due it for 1929 and prior years. After these statements were received, plaintiff, as was necessary, made an extensive investigation of county records to ascertain the ownership of the property against which the taxes were assessed. In May, 1931, plaintiff began filing suits for the recovery of taxes due the defendant. On June 12, 1931, the defendant city, acting through the mayor, gave written instructions to the district clerk not to file any more suits in the name of the city until further notice from the mayor, and the mayor at the same time advised plaintiff that he had so instructed the clerk. Plaintiff thereafter presented other tax suits for defendant to the district clerk for filing, which the clerk refused to file until instructed by the mayor of defendant city so to do. Plaintiff testified that he would have completed all the work under his contract in the time prescribed by the contract if the mayor's instruction to the clerk had not prevented his filing any suits.

The deputy district clerk corroborated the statements of plaintiff as to his efforts to carry out his contract by filing suits for recovery of these taxes, and the refusal of the clerk to accept and file the suits because of the instruction of the mayor.

On July 17, 1931, plaintiff wrote the mayor telling him in substance that he could not comply with his contract within the time specified therein unless he was permitted to file and prosecute suits for the collection of the delinquent taxes due the defendant city, and that he wanted to go on with his work and requested the mayor to let him know whether he was going to be permitted to proceed with his work. He closes this letter with the following appeal: "I hope to hear from you at once, or that you will withdraw your instructions to the District Clerk not to file more tax suits. I want to know what to expect and I believe that I have a right to know."

Plaintiff testified that at various times he inquired at the district clerk's office to see if the stop order had been rescinded, the last of these times being shortly before this suit was filed, and that each time he was informed that it was still in effect.

He further testified that if he had been permitted to do so he would have collected 95 per cent. of the taxes he was employed to collect and would have earned a little over $8,000 under his contract. He had done a great deal of this kind of work and had been successful in collecting about 95 per cent. of the taxes he was employed to collect.

None of this testimony is contradicted, and it seems clear to us that the first finding of the jury, before set out, is without any evidence to support it. Upon this state of the evidence it is unnecessary to cite authorities to sustain the propositions that the issue should not have been submitted to the jury, and plaintiff's motion to set aside the finding should have been granted.

■ The second and third findings of the jury, above set out, are assailed by appel-

lant under appropriate assignments and propositions on various grounds. We deem it unnecessary to discuss and decide each and all of the questions presented by these propositions. The main and decisive question affecting the disposition of this appeal is whether there is sufficient evidence to support the findings of the jury that the plaintiff failed in the performance of his contract to use such care in the collection of delinquent taxes for defendant as a competent attorney would have used under the same or similar circumstances, and that the failure to exercise such care was sufficient to justify the city council to have the mayor instruct the district clerk not to receive or file further suits for collection of these taxes by the city.

The acts and omissions which the defendant alleged in its pleadings as showing a negligent want of care which established the incompetence of plaintiff to perform the services required of him by his contract are: "(a) That he filed a suit against Emil Lipper after Lipper's death; (b) that he filed suit against Boyd and Stanburg for taxes on certain lots when the title to the premises was in the State of Texas by virtue of a judgment alleged to have been rendered less than one year before; (c) that suit was filed against Chauvin on June 6, 1931, and no citation was issued thereon; and (d) that suit was filed against J. V. Dealey on June 9, 1931, and no citation was issued thereon." It was also alleged that Dabney had made some errors in the preparation of the statements of taxes, penalties, and interest due the city.

The evidence upon each of these charges, found in the record, is as follows: "Emil Lipper died in 1922, but the City assessed taxes against him and the statements upon which the suits were to be filed were furnished by the City Tax Collector. Without knowing that Lipper was dead, plaintiff filed a suit against him on the statements so furnished. Within two days thereafter he discovered that Lipper was dead and filed an amended petition bringing in Lipper's wife, Fannie Lipper, the sole devisee under his will."

Conceding that the evidence sufficiently shows that the state had acquired title to the Boyd and Stanberg land through foreclosure of a tax lien thereon and sale of the land, the evidence further shows that this occurred in 1930, and the equity of redemption being in Boyd and Stanberg at the time plaintiff filed suit against them to recover taxes assessed against the property and due the defendant city, the suit against them was proper and necessary.

The evidence does not show that plaintiff was responsible for the failure of the clerk to issue citations in the suits mentioned in defendant's answer. On the contrary, the plaintiff testified, that when he filed the petitions in these suits, the clerk told him he would issue the citations and deliver them to the sheriff. One of these suits was filed on June 6th and the other on June 9th, just a day or two before the mayor notified the clerk not to file any more delinquent tax suits for the defendant city, and the instruction by the defendant city to the clerk before shown probably accounts for the failure of the clerk to issue these citations and deliver them to the sheriff. There is no testimony that plaintiff instructed or requested the clerk not to issue the citations.

The evidence shows that in eighteen statements prepared by plaintiff there were errors in addition. As many as six hundred statements were prepared by plaintiff and given to Mr. Dodd, the city tax collector, for his convenience. Dodd testified that he never used or relied upon any of these statements. It was not shown that plaintiff was originally responsible for any of these errors, but if such showing had been made, it would have furnished no ground for defendant's refusal to permit plaintiff to carry out the contract which defendant had made with him, and certainly does not show the incompetence of plaintiff to efficiently perform his contract with the defendant. The overwhelming weight and preponderance of the evidence shows that plaintiff was experienced, competent, and successful in the performance of the services required of him under his contract.

The witnesses who testified for plaintiff on this issue were Judge J. Llewellyn, formerly judge of the district court of Liberty county, Judge C. F. Stevens of Harris county, Judge I. B. Simmons of Liberty county, E. W. Pickett, district clerk of Liberty county, W. D. Partlow, tax collector and business manager of the Liberty independent school district, and L. C. Stuesoff, tax assessor and collector for the city of Liberty.

The first of these witnesses testified that he had known plaintiff for fifteen years and that he was competent to handle tax suits. Judge Stevens testified that he had known plaintiff for thirty years and that he was competent to do the work required of him under his contract with defendant. Judge Simmons testified that he knew of plaintiff's work when witness was county judge of Liberty county, and that in his opinion plaintiff was competent for that work. Pickett, the district clerk of Liberty county, testified that plaintiff began collecting delinquent taxes for the state and county in Liberty county about twenty-three years before this suit was filed, and had been doing this kind of work frequently since then; that he knew of plaintiff's work in Liberty county, and in the opinion of witness plaintiff was a capable man in prosecuting suits for delinquent taxes. Partlow, tax collector and business manager of the Liberty independent school district, testified that plaintiff had handled similar work for the school district, and in the opinion of the witness was competent for such work; that plaintiff had collected about 95 per cent. of the taxes he was employed to collect for the school district. The tax assessor and collector for the city of Liberty testified that he had known plaintiff for about thirty years and knew of his work as a collector of delinquent taxes for the city of Liberty, and that in the opinion of witness plaintiff was a capable man at that kind of work.

There is no evidence tending to contradict the testimony of these witnesses, save the testimony of one witness which is contradicted by the plaintiff, and which, if true, is insufficient to support the finding of the jury on the question of competence to perform the services required of him by his contract.

We agree with plaintiff that the trial court erred in refusing to set aside the findings of the jury before set out upon the issue of plaintiff's competence to perform the services required of him by his contract with the defendant. If the evidence which we have above set out raises the issue of plaintiff's competence, which may well be doubted, the findings of the jury are so against the overwhelming weight and preponderance of the evidence as to be clearly wrong, and the verdict should be set aside on that ground. The findings of the jury in favor of the defendant upon other issues submitted to them are wholly without evidence to support them. There is not a scintilla of evidence to support some of these findings. This is specially true as to findings 4, 5, and 6, before set out. We think the findings as a whole indicate that the jury were improperly influenced in rendering their verdict. We do not mean to say that any of the jurors was consciously acting from an improper motive in rendering his verdict. The suit was tried on a wrong theory. The plaintiff did not agree to perform his contract with defendant city to the satisfaction, nor in accordance with the desires or orders, of the mayor and city council. The fact that he became angered at the unauthorized interference of the city authorities in his efforts to carry out his contract, and that in his conference with the mayor and council he may have used impolite language, did not give those authorities the right to breach the contract made with him by defendant city, by instructing the clerk of the district court not to file any suits for delinquent taxes brought by plaintiff under his contract, and refusing to revoke such instruction.

■ It seems to us that the undisputed evidence shows that defendant city, acting through its mayor and city council, breached its contract with plaintiff by making it impossible for him to perform the services required of him under the contract, and that this breach of the contract entitles plaintiff to recover as damages what he would have earned had defendant not so breached its contract. In our opinion, as expressed in what we have above said, neither the pleadings nor the evidence furnish any sufficient excuse or defense for defendant's breach of the contract.

These conclusions sufficiently dispose of the material questions presented by the record. We may properly add that the remarks of counsel for defendant in his address to the jury were improper and prejudicial to plaintiff and probably harmfully affected plaintiff's rights to a fair and impartial consideration by the jury of the facts in evidence.

If other errors are shown, they are not such as will occur upon another trial, and therefore need not be pointed out or discussed in detail.

For the reasons indicated, the judgment is reversed and the cause remanded.

Reversed and remanded.