# DECEMBER, 1938

CITY OF SOUTH HOUSTON v. J. F. DABNEY.

No. 7115. Decided October 26, 1938.
Rehearing overruled December 7, 1938.
(120 S. W., 2d Series, 436.)

*Sewall Myer* and *J. E. McWhorter*, both of Houston, for plaintiff in error.

The invalidity of this purported contract and the lack of the City's power and authority to make such a contract can be raised at this time and must be considered by this Court regardless of when or how the issue was raised. A city may exercise only such powers as are expressly conferred by statute or its charter and when such power is doubtful it should be held not to exist. Anderson v. City of San Antonio, 123 Texas 163, 67 S. W. (2d) 1036; City of Uvalde v. Uvalde Elec. & Ice Co., 235 S. W. 625; Gohlman Lester & Co. v. Whittle, 114 Texas 584, 273 S. W. 808; 30 Texas Jur. 198; Davis v. City of Taylor, 123 Texas 39, 67 S. W. (2d) 1033.

*Kirby Fritzpatrick* and *Walter F. Brown*, both of Houston, for defendant in error.

*Touchstone, Wright, Gormley & Price, C. D. Crockett, W. Floyd Clark, Jerome Chamberlin, Bell, Goode, Heisen & Miller, Herbert S. Bonney, Jr., J. W. Hassell, Saner, Saner & Jack* and *Alfred Sallinger*, all of Dallas, *McNeil & McNeil* and *McDougald & Beck*, all of Beaumont, *Cunningham & Lipscomb*, of Bonham, *Darden, Burleson & Wilson*, of Waco, *Ralph E. Cadwallader*, of San Antonio, *C. D. Jessup, Jr.*, of Houston, and *H. C. Ellis*, of Paris, filed briefs as amici curiae.

MR. PRESIDING JUDGE HARVEY delivered the opinion of the Commission of Appeals, Section A.

This suit was brought by the defendant in error, J. F. Dabney, against the City of South Houston, a city operating as such under the general law. The suit is for damages for the breach by the city of an alleged contract made and entered into by and between said city and Dabney on the 11th day of November, 1930. The terms of the agreement between the parties are embodied in a written instrument, which instrument so far as material, reads as follows:

"The State of Texas
"County of Harris

### I

"Whereas, the City Council of the City of South Houston deems it expedient to contract with some competent attorney to enforce the payment of delinquent taxes, interest, penalty and delinquency costs due the City of South Houston, as provided for in Chapters 13 and 21 of the Acts of the 38th Legislature, Second Called Session, for a per cent. of the same actually collected and paid to the Tax Collector of the City of South Houston; and

### II

"Whereas the City Council deems J. F. Dabney a competent attorney and a proper person to collect and enforce the collection of said taxes, and to enter into contract with for such purpose, and that said J. F. Dabney has no official connection with any office of said City of South Houston, and that he is not related within the third degree by affinity or consanguinity with any officer of said City of South Houston now holding office therein; and

### III

"Whereas, the City Council of the City of South Houston has at a meeting thereof on the 11th day of Nov., 1930, by order entered in its minutes, employed the said J. F. Dabney to collect and enforce the collection of said city taxes, and has authorized and directed the Mayor of said City of South Houston to enter into contract in writing on behalf of the said City of South Houston, with the said J. F. Dabney in accordance with said order;

### IV

"Now, therefore, the following contract is entered into by and between the City of South Houston and the said J. F. Dabney: Said J. F. Dabney is hereby employed to, by suit or otherwise, collect all delinquent taxes, with the interest, penalties and delinquency costs accrued thereon, shown to be delinquent by the tax records of the said City of South Houston, against all lands and lots situated within the corporate limits of the said City of South Houston for all years down to and including the year 1929, and said J. F. Dabney is authorized to file and prosecute suits therefor in the name of the City of South Houston, as provided in said Acts of the Legislature.

### V

"Said J. F. Dabney agrees and undertakes to enforce the tax lien given by law for taxes due said City of South Houston, with the interest, penalties and costs accrued thereon, or to collect the same without the enforcement of said lien, on all

lands and lots and the improvements thereon situated within the corporate limits of the City of South Houston, for the years provided for in paragraph IV of this contract, regardless of the size of the tract or lot of land or the amount of taxes due thereon; provided, however, that the provisions of this paragraph of this contract shall be deemed to have been complied with when any one or more of the following have been done as respects any particular tract or lot of land:

"(a) When the taxes, interest, penalties and costs due and collectible, as shown on the delinquent tax records to be due said City of South Houston have been collected and paid over to the Tax Collector of said city;

"(b) When it has been found that such taxes have been erroneously assessed or levied, or that such lands or lots do not exist, or are in conflict with other surveys, or that there is a double assessment against the same and the taxes paid under one assessment, or where it appears for any legal reason that such taxes are uncollectible;

"(c) When a valid suit has been brought and judgment rendered in the District Court of Harris County, Texas, for the defendants in such suit, provided that such judgment shall be appealed from for review by the appellate courts, if in the opinion of said J. F. Dabney of said City Council it is erroneous and should be reversed, and said Dabney shall prosecute such appeal;

"(d) When a valid judgment has been rendered foreclosing the tax lien thereon, and the same has been sold under order of sale and bid in by the City of South Houston, and deed therefor has been executed as provided by law.

VI

"Said J. F. Dabney agrees to pursue the collection of said taxes with reasonable diligence, by suit or otherwise, and shall complete the work hereunder, except the prosecution of contested suits, within two years from the date hereof. He shall use such care as a competent attorney would use to obtain valid tax judgments and sales thereunder for all taxes against said lands and lots. For his services hereunder he shall be entitled to receive, and shall receive, out of the taxes, interest and penalties collected and paid over to the Tax Collector of the City of South Houston, twenty five (25%) per cent. of the same, and in addition thereto, he shall be entitled to receive, and shall receive, the attorney's fee provided by law for the prosecution of tax suits, to be paid when the same is collected.

VII

"In case of the sale of lands and lots for taxes, and the same

is bid in for the City of South Houston, and the subsequent sale of same in the manner provided by law, and the payment of the taxes, interest and penalties over to the Tax Collector of the City of South Houston, said J. F. Dabney shall be entitled to his commission on same as provided in this contract, during the continuance of the work to be done under same, and said Dabney shall attend to such resales.

### VIII

"In the prosecution of the collection of taxes under this contract and the enforcement of the tax lien for same, said J. F. Dabney shall, at his own expense, furnish all paper, stationery and blank forms, except tax receipts and permanent tax records of said city, and shall pay all other expenses incurred in the collection of said taxes and the enforcement of the tax lien therefor, except court costs and such expenses as are collected as such, and the City of South Houston shall not be liable to him therefor.

### IX

"The commission to which said J. F. Dabney is entitled under this contract shall be paid to him by the Tax Collector immediately after the regular meeting of the City Council each month, for taxes collected during the preceding month, out of the taxes, interest and penalties so collected.

### X

"It is provided that when the Delinquent Tax Record of the City of South Houston have been cleared of the taxes thereon in one of the ways provided for in paragraph V of this contract, or it is disclosed that such assessments should be canceled by reason thereof, either party to this contract may terminate the same. Said J. F. Dabney shall report to the City Council of the City of South Houston all assessments that are found to be uncollectible, as provided for in paragraph V of this contract.

"Witness the City Council of the City of South Houston, by the Mayor of said City, as ordered by the said City Council, and the said J. F. Dabney, in duplicate contract, this the 11th day of Nov., 1930.

T. E. Waite,
Mayor of the City of South Houston
J. F. Dabney."

Shortly after this contract was made, the city, through its governing body, repudiated same and forbade the district clerk of Harris County, Texas (the county in which South Houston is situated), to file any suits, at Dabney's instance, for the recovery of any delinquent taxes due said city. This action of the city resulted in obstructing and thereby preventing the

performance by Dabney of the services which are called for by the terms of the written agreement stated above. Damages, as for breach of contract, is sought to be recovered by Dabney against the city because of the action of the city just stated. In the trial court, judgment was rendered denying Dabney a recovery. On appeal, the Court of Civil Appeals reversed the trial court's judgment and remanded the cause. 93 S. W. (2d) 751. The city has been granted the writ of error on the ground, alleged in the application for the writ of error, that the contract purported by the written instrument set out above is void for lack of authority in the City of South Houston to make such contract. The specific provision of the contract upon which the controversy arises is the provision which purports to allow Dabney, as compensation for his services, twenty-five per cent of the taxes, penalties and interest recovered.

A consideration of the question presented calls to notice the following statutes:

Article 7343 of the Revised Statutes of 1925 reads as follows: "In any incorporated city or town in which any tracts, lots, outlots or blocks of land, situated within the corporate limits of said city or town have been returned delinquent, or reported sold to said city or town for the taxes due thereon, the governing body may prepare or cause to be prepared lists of delinquents in the same manner as provided in this chapter, and such lists shall be certified to as correct by the mayor of said city or town, if any, and if said city or town has no mayor, by the presiding officer of the governing body. After said lists have been properly certified to, the governing body of the city may cause lists of delinquents to be published in a newspaper as provided for State and county delinquent taxes in this law. When twenty days from the date of last publication of said list or lists of delinquents has elapsed, the governing body of the city or town may direct the city attorney to file suits for collection of said taxes, or said governing body may employ some other attorney of the county to file suits and the city attorney or other attorney filing said suits shall be entitled to the same fees as allowed the county attorney or district attorney in suits for collection of State and county taxes, to be taxed as costs in the suit. Independent school districts may collect their delinquent taxes as above provided for cities and towns, the school board performing the duties above described for the governing body of cities, and the president of the school board performing the duties above prescribed for the mayor or other presiding officer. The school board may, when the delinquent

tax lists and records are properly prepared and ready for suits to be filed, instruct the county attorney to file said suits. If the school board instructs the county attorney to file said suits and he fails or refuses to do so within sixty days the school board may employ some other attorney of the county to file suit. The county attorney, or other attorney, filing tax suits for independent school districts, shall be entitled to the same fees as provided by law in suits for State and county taxes. No other county officer shall receive any fees unless services are actually performed, and in that event he shall only receive such fees as are now allowed him by law for similar services in civil suits. The employment of an attorney to file suit for taxes for cities, towns or independent school districts shall authorize said attorney to file said suits, swear to the petitions and perform such other acts as are necessary in the collection of said taxes.

"All laws of this State for the purpose of collecting delinquent State and county taxes are by this law made available for, and when invoked shall be applied to, the collection of delinquent taxes of cities and towns and independent school districts in so far as such laws are applicable."

Article 7335 of the Revised Statutes of 1925, reads as follows:

"Whenever the commissioners court of any county after thirty days written notice to the county attorney or district attorney to file delinquent tax suits and his failure to do so, shall deem it necessary or expedient, said court may contract with any competent attorney to enforce or assist in the enforcement of the collection of any delinquent State and county taxes for a per cent on the taxes, penalty and interest actually collected, and said court is further authorized to pay for an abstract of property assessed or unknown and unrendered from the taxes, interest and penalty to be collected on such lands, but all such payment and expenses shall be contingent upon the collection of such taxes, penalty and interest. It shall be the duty of the county attorney, or of the district attorney, where there is no county attorney, to actively assist any person with whom such contract is made, by filing and pushing to a speedy conclusion all suits for collection of delinquent taxes, under any contract made as herein above specified; provided that where any district or county attorney shall fail or refuse to file and prosecute such suits in good faith, he shall not be entitled to any fees therefrom, but such fees shall nevertheless be collected as a part of the costs of suit and applied on the payment of the

compensation allowed the attorney prosecuting the suit, and the attorney with whom such contract has been made is hereby fully empowered and authorized to proceed in such suits without the joinder and assistance of said county or district attorneys."

The vital question arises as to wether or not the general language contained in the concluding clause of Article 7343 has effect to render available to the governing body of a city operating under the general laws the same authority with respect to the collection of delinquent taxes due the city as is provided for the commissioners court of a county, by Article 7335, with respect to the collection of delinquent State and county taxes. A careful consideration of the question convinces us that the concluding provisions of Article 7343 were not intended to have this effect. It is to be observed that in the last mentioned article authority is specifically provided for the governing body of a city to employ an attorney "to file suits" for the recovery of delinquent taxes due the city, and it is specifically provided that such attorney "shall be entitled to the same fees as allowed the county attorney or district attorney in suits for collection of State and county taxes, to be taxed as costs of the suit." The scope and character of the services to be performed by the attorney under the employment are defined in these words: "The employment of an attorney to sue for taxes for cities * * * shall authorize said attorney to file said suits, swear to the petition and perform such other acts as are necessary in the collection of said taxes." It is thus seen that in Article 7343 the Legislature has specifically dealt with the subject of employment of an attorney in cases of delinquent taxes due a city, and, by specific language, has prescribed the scope and effect of the contract, both with respect to the services to be performed by the attorney in fulfilling the employment engagement, and to the compensation he shall receive. With reference to the language contained in the concluding clause of this article, it may be conceded for the purpose of discussion that such language, standing alone, is sufficiently broad to embrace any authority provided by some other statute for the employment and compensation of an attorney for the collection of State and county taxes which are delinquent; but, however this may be, it is reasonably certain, in view of other terms of said article, that the concluding clause does not contemplate any other authority for the employment and compensation of an attorney for the collection of delinquent taxes than that which is specially provided in the same article in

specific relation to delinquent taxes due a city or town or an independent school district.

■ The governing body of the City of South Houston had no authority to bind the city to allow Dabney, as compensation for his services, a percentage of the taxes, penalties or interest recovered. In consequence of lack of authority in such governing body to bind the city in this respect, no contractural relation arose between Dabney and the city from the terms of the agreement. This is so for the reason that the agreement in its entirety, as an integral whole, constitutes the basis for the proposed contract. Consent of either party to the agreement to be bound by anything less than agreed upon is entirely wanting. Since the terms of the agreement as reduced to writing and embodied in the written instrument, have no contractural force, and since said agreement constitutes the essential basis of Dabney's claim herein for damages, his claim has no legal standing. The trial court correctly rendered judgment against him.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

Opinion adopted by the Supreme Court, October 26, 1938.

Rehearing overruled, December 7, 1938.