## TRI-CITY FRESH WATER SUPPLY DISTRICT NO. 2 OF HARRIS COUNTY v. GERALD C. MANN, ATTORNEY GENERAL.

Motion No. 14568. Decided September 11, 1940.
Rehearing overruled October 2, 1940.
(142 S. W., 2d Series, 945.)

*R. R. Lewis, Geo. D. Neal* and *A. T. Carlton,* all of Houston, for relator.

*Gerald C. Mann,* Attorney General, *C. E. Crowe* and *Claud O. Boothman* and *Geo. W. Barcus,* Assistants Attorney General, for respondent.

MR. CHIEF JUSTICE MOORE delivered the opinion of the Court.

This is a mandamus proceeding instituted in the Supreme Court by Tri-City Fresh Water Supply District No. 2 of Harris County as relator against Gerald C. Mann, Attorney General, as respondent, praying that writ of mandamus issue, requiring the Attorney General to approve the transcript showing the proceedings relating to the issuance of bonds of relator in the aggregate amount of $60,000.00, and that he be required to certify to the Comptroller of the State of Texas that such bonds are valid, legal, and binding obligations of the Tri-City Fresh Water Supply District No. 2 of Harris County, Texas.

The Attorney General admits that the District has been duly and legally incorporated as a Fresh Water Supply District under Chapter 4, Article 7881 to 7959a, inclusive, of the Revised Civil Statutes of Texas, 1925, and amendments thereto as shown in Vernon's Texas Revised Civil Statutes (1936 ed.),

and that it has all the powers and is subject to all the limitations under the Constitution and statutes appertaining to the organization of such a district.

The Attorney General resists the issuance of the mandamus on the grounds that the notices given for the voting of the bonds and the bonds themselves show that the money proposed to be raised by the sale of the bonds is to be used, in part, for "the construction of a sewage system and a sewage disposal plant and the laying of mains for fire protection and the erection of fire hydrants and the buying of fire equipment * * *"; and that such purposes are neither authorized by the Constitution nor by the statutes.

The notices which were posted for voting these bonds stated, in substance, that they were to be issued to raise money to construct, equip, and complete a "Fresh Water Supply System" for the inhabitants of the district, to consist of water wells, inundated tanks for storage, with the right to acquire necessary land upon which to drill such wells, and the necessary pump lines for distribution, power, equipment, and all other equipment necessary or convenient to furnish water for all domestic and commercial purposes; to purchase physical properties consisting of any well or wells, tanks, pumps, land and easements and distributing systems now being operated in said district, and for the purpose of constructing, equipping necessary main line, fire plugs and connections, *"and all equipment necessary to furnish fire protection for the said district; for the purpose of constructing, equipping, connecting lines and main pump lines, including man-holes, and other appurtenances necessary to collect and transport sewerage from residences and commercial establishments in the district or for lift stations and disposal plant or plants and outfall to tide water,* with necessary lands and easements for the construction of all of same, * * **." (Italics ours.)

Substantially the same provisions are set forth in the order directing the issuance of the bonds, and in the purpose clause recited in the face of each of the bonds.

The people of this district do not have the power to determine for themselves such corporate functions as they may wish to inaugurate, such as are granted to cities and towns operating under home-rule charters. This district may exercise only such powers as have been expressly delegated to it by the Legislature, or which exist by clear and unquestioned implication. Therefore, the right to issue these bonds for all the purposes named in this bond record must be sought for in the

words of the statute which authorized the creation of the district.

We have given careful consideration to all the articles of this statute, but we shall refer only to such of its provisions as are deemed material in the consideration of this case. Article 7881 sets forth the purposes of the law, and Articles 7917 and 7918 define the pertinent specific powers with which a Fresh Water Supply District may be invested when organized, and these articles are here copied verbatim.

"Article 7881. There may be created within this State conservation districts to be known as Fresh Water Supply Districts for the purpose of conserving, transporting and distributing fresh water from lakes, pools, reservoirs, wells, springs, creeks, and rivers for domestic and commercial purposes, as contemplated by Section 59, Article 16 of the State Constitution. Said districts shall have and may exercise all the rights, privileges and powers given by this chapter and in accordance with its directions, limitations and provisions. Such districts may or may not include cities and towns."

"Art. 7917. All such districts have such powers of government, and with authority to exercise such rights, privileges and functions concerning the purposes for which they are created, as may be conferred by this chapter, or any other law in this State, to the benefit of which they may become entitled. All such districts shall have full authority and right to acquire water rights and privileges in any way that any individual or corporation may acquire same, and to hold the same either by gift, purchase, devise, appropriation or otherwise. No enumeration of specific powers herein shall be held a limitation upon the general powers conferred by this chapter, unless distinctly so expressed."

"Art. 7918. All districts shall have full power and authority to build, construct, complete, carry out, maintain, and in case of necessity add to and rebuild, all works and improvements within and without such districts necessary to accomplish any plan of conservation, transportation and distribution of fresh water adopted for or on behalf of such districts, and may make all necessary and proper contracts, and employ all persons and means necessary to that end; and such districts are authorized, if the governing bodies thereof shall deem it necessary, to take over in whole or in part by purchase or otherwise, any water plants or systems within such districts."

There is nothing contained in any other article of the Statute which purports to confer on Fresh Water Supply Districts any different powers than those named in the foregoing sections.

■ Looking therefore to these provisions, we have reached the conclusion that this district has no authority to issue bonds and levy taxes to raise money either to purchase and install equipment for fire protection, or to construct, equip, and operate a sewerage system. No such powers are expressly delegated to the district, as is plainly evident from the language of the statute, and under well-established principles of law we are of the opinion that these distinct corporate functions cannot be implied from the powers specifically named in the statute.

■ It is a general rule of judicial construction that even normal municipal corporation has only such implied powers as are reasonably necessary to make effective the powers expressly granted. That is to say, such as are indispensable to the declared objects of the corporation and the accomplishment of the purposes of its creation. Powers which are not expressed and which are merely convenient or useful may not be included and cannot be maintained. Furthermore, where powers are granted to a municipality by specific provisions, such powers are not enlarged by general language found elsewhere in the act, such as is found in Article 7917, supra. City of Arlington v. Lillard, 116 Texas 446, 294 S. W. 829; Dallas Consol. Electric St. Ry. Co. v. City of Dallas (Tex. Com. App.), 260 S. W. 1034. In discussing this subject this Court in the case of Foster v. City of Waco, 113 Texas 352, 255 S. W. 1104, speaking through the late Chief Justice Cureton, said: "Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied. Of every municipal corporation the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act, or make any contract, or incur any liability, not authorized thereby, or by some legislative act applicable thereto. All acts beyond the scope of the powers granted are void."

Additional discussion of authorities would seem to be unnecessary, but because of the pertinency of the facts, we direct attention to the case of Dallas Consol. Electric St. Ry Co. v. City of Dallas, supra. In that case it was claimed by the city that by clear implication it had the power to assess a tax against the Street Railway Company in order to pay, in part, the cost of digging a storm sewer in connection with the construction of other improvements along a certain street. The

Court held that the city had no such implied power, in that the construction of a storm sewer was not a necessary incident to the construction of surface improvements along said street, for which the city was expressly authorized by charter to make an assessment against contiguous property owners, and reversed the decision of the Court of Civil Appeals, which had held to the contrary. In so doing the court quoted with approval from 19 Corpus Juris, p. 715, where it is stated: "The power to levy assessments for the construction of drains can be exercised only when granted in clear and unmistakable terms, and statutes purporting to grant such power must be strictly construed as against those asserting the right to exercise it." See also Anderson v. City of San Antonio, 123 Texas 163, 67 S. W. (2d) 1036; City of South Houston v. Dabney, 132 Texas 96, 120 S. W. (2d) 436; City of Arlington v. Lillard, supra; Texas-Louisiana Power Co. v. City of Farmersville (Tex. Com. App.), 67 S. W. (2d) 236; McQuillin on Municipal Corporations (2d ed.) Vol. 1, p. 926; Dillon on Municipal Corporations (5th ed.), Vol. 1, p. 448 et seq.

■ What has been said relates primarily to municipal corporations, proper, because what is applicable to them is usually applicable to districts such as that of relator, but with some limitations. For one thing these districts do not possess, at least the relator does not possess, broad police powers to do those things which are necessary to promote the public health and general welfare, which are ordinarily expressly delegated by statute to cities and towns, and by virtue of which the governing bodies of such municipalities are permitted to make rules and regulations and enact ordinances, which, if not expressly authorized, are very generally upheld by the courts as being in the interest of the health and safety of the inhabitants of the municipalities.

■ Governmental agencies, or bodies corporate such as Fresh Water Supply Districts, under our statute, are commonly referred to by courts as quasi municipal corporations, for the reason that they are constituted by the Legislature to exercise, in a prescribed area, a very limited number of corporate functions, and they are said to be "low down in the scale or grade of corporate existence." The powers of such districts are measured by the terms of the statutes which authorized their creation, and they can exercise no authority that has not been clearly granted by the Legislature. As expressed by the Court in Stratton v. Commissioners' Court of Kinney County (Tex. Civ. App.), 137 S. W. 1170 (writ of error denied), the powers of

such governmental agencies as counties, townships, and school districts "are generally more strictly construed than those of incorporated municipalities." See also Grand Lodge, Etc. v. Curry et al (Tex. Civ. App.), 108 S. W. (2d) 574 (writ of error denied) ; McQuillin on Municipal Corporations (2d ed.), Vol. 1, p. 391, sec. 135; 17 American Jurisprudence, page 789; O'Brien v. Wheelock, 184 U. S. 450, 46 L. Ed. 636; Board of Improvement of Sewer District No. 2 of Fort Smith v. Moreland, 94 Ark. 381, 127 S. W. 469; Eastern Illinois State Normal School v. City of Charleston, 271 Ill. 602, 101 N. E. 573; L. R. A. 1916D, 991. Numerous cases of similar import from other jurisdictions might be cited.

Had the Legislature intended to invest Fresh Water Supply Districts with corporate powers to purchase and install apparatus for fire prevention and fire protection and to construct and operate a sewerage system within a given territory, it doubtless would have so enacted in plain language. Not having done so, and this district having no such delegated legislative powers, it becomes unnecessary to discuss the constitutional question suggested by the Attorney General.

██ It is axiomatic that if the Tri-City Fresh Water Supply District No. 2 of Harris County has no power to construct the aforementioned improvements, it has no right to levy taxes against the inhabitants of the district to raise money to construct such improvements. The power to tax belongs to the sovereignty. It can only be exercised by a subordinate corporate body when delegated to it either by the Constitution or by the legislature, and when so delegated, it must be exercised for those purposes, only, which are distinctly included in the constitutional or legislative provision. As stated by this Court in Frosh v. City of Galveston, 73 Texas 401, such power, when so conferred, "is to be strictly construed and must be closely followed." To the same effect are the following cases: Wood v. City of Galveston, 76 Texas 126, 13 S. W. 227; City of Tyler v. Coker (Tex. Civ. App.), 124 S. W. 729; Ripley v. Trinity River Canal & Conservancy Dist., 88 S. W. (2d) 752 (writ of error denied) ; State v. Houston & T. C. Ry. Co. (Tex. Civ. App.), 209 S. W. 820; Stratton v. Commissioners' Court of Kinney County, supra.

It appears from the record in the instant action that the petition for the election to determine whether or not this district should be incorporated indicated that the signers contemplated that the district, if incorporated, would have authority or power to do and perform all of the functions and things for which these bonds are contemplated to be issued. We

assume that the order for the election and the notice thereof indicated the same thing. Ptacek et al appeared before the Commissioners' Court and contested the order of the election as petitioned for. In spite of the contest the Commissioners' Court entered and sustained the order just indicated. Thereafter Ptacek et al filed suit in the district court to annul or cancel such election order. This suit was filed before the election was held, but tried after such event had transpired. On final trial in the district court judgment was entered refusing cancellation of the above-mentioned election order. On appeal by Ptacek et al the judgment of the district court was affirmed by the Court of Civil Appeals. Ptacek v. Hofheinz, 128 S. W. (2d) 872. This Court refused writ of error.

■ If we properly interpret their brief and argument, counsel for relator in this action contend that the judgment of the Court of Civil Appeals in the former action above mentioned is res adjudicata of the right or power of this district to issue these bonds. It is our opinion that the former judgment only adjudicated that the election order under attack was sufficient in form and substance to order an election to determine whether this district should be incorporated with powers conferred by law. It can hardly be said that a district like this, or for that matter any district, can be given powers not authorized by law by the simple expedient of indicating such unauthorized powers in the preliminary steps incident to incorporation. Simply stated, we are of the opinion that the fact that the preliminary steps incident to the incorporation of this district indicated that it was contemplated that it might exercise powers not authorized by law would neither invalidate the district nor invest it with such unauthorized powers.

This proceeding has been heard upon the motion to file relator's petition for mandamus, and the Court being of the opinion that the mandamus should be refused, it is ordered that the motion to file said petition be and the same is hereby overruled.

Opinion delivered September 11, 1940.

Rehearing overruled October 2, 1940.