

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

July 24, 1957

Hon. Zollie Steakley
Secretary of State
Austin, Texas

Dear Mr. Steakley:

Opinion No. WW-202

Re: House Bill No. 3, Acts 55th
Legislature, Article 6252-9,
V.C.S.

Your opinion request concerns primarily Section 3(b) of House Bill 3, Acts 55th Legislature, Regular Session, Chapter 100, page 213, (Article 6252-9, Vernon's Texas Civil Statutes).

Section 3(b) provides:

"If an officer or employee of a state agency, legislator or legislative employee is an officer, agent, or member of, or owns a controlling interest in any corporation, firm, partnership, or other business entity which is under the jurisdiction of any state regulatory agency he shall file a sworn statement with the Secretary of State disclosing such interest."

You have asked seven questions. We have taken the liberty of rearranging the order of these questions. Each question will be set out immediately above the discussion germane to the respective question. Three of the questions are:

"1. Are the various River Authorities, such as the Lower Colorado River Authority, state agencies, and are their members and employees required to file the sworn statement required by Section 3(b) if otherwise applicable?

"2. Is the Texas Commission on Higher Education a 'State agency', and are its members and staff required to file the sworn statement required by Section 3(b), if otherwise applicable?

"3. Is the State Bar of Texas a 'State agency' and are its officers and employees required to file the sworn statement required by Section 3(b) if otherwise applicable?"

Section 2(a) of House Bill 3 defines "State agencies" as:

". . . any office, department, commission or board of the executive department of government."

The statutory definition, however, does not fully answer the question. Consideration must be given to the legislative intent. Article 10, R.C.S., provides:

"The following rules shall govern in construction of all civil statutory enactments.

". . .

"6. In all interpretations, the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy.

". . .

"8. The rule of the common law that statutes in derogation thereof shall be strictly construed shall have no application to the revised statutes; but the said statutes shall constitute the law of this State respecting the subjects to which they relate; and the provisions thereof shall be <u>liberally construed with view to effect their objects and to promote justice</u>."*

The evil that the statute was designed to curb is shown in Section 1 of House Bill 3, which provides as follows:

"It is hereby declared to be the policy of the Legislature that no officer or employee of a state agency, Member of the Legislature or legislative employee should have any interest, financial or otherwise, direct or indirect, or engage in any business or transaction or professional activity or incur any obligation of any nature <u>which is in substantial conflict</u> with the proper discharge of his duties in the public interest. To implement such policy and to strengthen the faith and confidence of the people of Texas in their Government, there is herein enacted a code of ethics setting forth standards of conduct to be observed by <u>state officers and employees</u> in the performance of their official duties. It is the intent of the Legislature that this code shall serve not only as a guide for official conduct of the <u>State's public servants</u> but also as a basis for discipline of those who refuse to abide by its terms."

---

*Emphases supplied throughout.

The language of Section 1 indicates that the statute is intended -to regulate State officials and employees as distinguished from local governmental officials and employees. This construction excludes governmental officers and employees of subdivisions of the State, such as counties and cities, and other strictly municipal corporations whose operations and jurisdiction pertain only to a particular locale within the State.

The various River Authorities such as the Lower Colorado River Authority are all organized pursuant to special enactments of the Legislature which are found in Chapter 12 of Title 128 (Water), V.C.S., and pursuant to the constitutional authority found in Section 59, Article XVI of the Texas Constitution. By the express terms of Article XVI, Section 59, such River Authorities "shall be governmental agencies and bodies politic and corporate. . . ." They are all limited in their area of operation to a particular locale within the State by the respective enabling statutes. The enabling statutes vary considerably, but it may be said that River Authorities incorporated pursuant to Article XVI, Section 59 of the Constitution, are quasi municipal corporations. Tri-City Fresh Water Supply District No. 2 v. Mann, 135 Tex. 280, 142 S.W.2d 945 (1940). In the case of Willacy County Water Control and Improvement District No. 1 v. Abendroth, 142 Tex. 320, 177 S.W.2d 936 (1944) the Supreme Court stated:

"Irrigation districts, navigation districts, levee and improvement districts, and like political subdivisions created under Section 59a of Article XVI of the Constitution, and statutes enacted thereunder carrying out the purposes of such constitutional provision, are not classed with municipal corporations, but are held to be political subdivisions of the State, performing governmental functions, and standing upon the same footing as counties and other political subdivisions established by law. (Citations)."

The Lower Colorado River Authority and similar River Authorities, which are quasi municipal corporations and political subdivisions of the State, are not among those governmental agencies which were intended to be regulated by House Bill 3. The evil intended to be regulated is an evil existent in governmental agencies that are state-wide in their jurisdiction and operation as distinguished from jurisdiction and operation limited to a local area.

Furthermore, such River Authorities are not commonly understood to be "offices, departments, commissions, or boards", and as such would not fall within the definition set forth in Section 2(a) of House Bill 3.

The Texas Commission on Higher Education was established by Article 2919e-2, V.C.S. Its purpose is to coordinate the activities of the public agencies of higher education throughout the State, and as such it certainly is state-wide in its operation as distinguished from a governmental agency that is merely localized in its jurisdiction or operation.

It is readily apparent that it is a commission within the meaning of Section 2(a).

Is it a commission of the executive department of the government? The Legislature, in using the phraseology in Section 2(a) of House Bill 3, "executive department of the government", did not mean to restrict that language to the officers enumerated and designated as "The Executive Department of the State" set out in Article IV, Section 1 of the Constitution.[1] If such were the case there would be no meaning that could be given to the words, "commission or board" found in Section 2(a) for the reason that Section 1, Article IV of the Constitution does not include any commission or board. The phraseology, "executive department of the government" must therefore refer to such of the governmental agencies of the State whose jurisdiction and operations are state-wide in scope and which have and exercise executive powers and functions. The Texas Commission on Higher Education is such a commission of the executive department of the government within the meaning of Section 2(a) of House Bill No. 3. It performs functions that are executive in nature and state-wide in scope as disclosed by Article 2919e-2, Vernon's Texas Civil Statutes.

This commission has functions and powers that are executive in nature, and for the reasons stated would come within the provisions of Section 3(b).

The State Bar of Texas, by the express terms of Section 2 of Article 320(a)-1, V.C.S., is constituted "an administrative agency of the Judicial Department of the State". It would not, therefore, be an "office, department, commission, or board of the executive department of the government", and a State agency within the meaning of the Act.

You also ask:

"4. Is an officer or employee of a State agency, legislator or legislative employee who is a minority stockholder in a corporation nevertheless required to file the sworn statement under Section 3(b), assuming the corporation to be under the jurisdiction of either the Board of Insurance Commissioners, the Banking Department, the Railroad Commission, or the Texas Liquor Control Board?"

The Act itself is a conflicts of interests statute as set out in the quoted portions of Section 1, supra. The Legislature evidently felt that a substantial conflict of interests would not result from stock ownership per se, for filing of the affidavit is required only when one is "an officer, agent, or member of, or owns a controlling interest in any corporation, firm, partnership or other business entity. . . ." As explained hereafter, the phrase "member of" does not apply to stock ownership.

A minority stockholder clearly could be an agent or officer of a corporation and would be required to file the affidavit. A minority stockholder can control a corporation. The percentage of stock required to control a corporation includes many matters, such as stock distribution amongst the stockholders, amount of stock voted by proxy, by whom the proxies were held, and the outside business and personal relationships between the stockholders to the corporation.

One vote or share over fifty per cent (50%) of the stock ownership will be controlling as a matter of law. Ownership of fifty per cent (50%) or less can be controlling under certain circumstances. It is a question of fact to be determined in each such case. Initially, it is for the individual stockholder to determine if his interest is controlling, but his decision is not final. The individual stockholder generally knows if his interest is controlling; however, in this matter his determination will be subject to review by his superiors, and if necessary, by the court; Therefore, a minority stockholder, in those cases in which his interest is a controlling interest, would be required to file the affidavit required by Section 3(b) of the Act.

Two other of your questions are:

"Is an officer or employee of a State agency, legislator or legislative employee required to file the sworn statement under Section 3(b) if he is a member of a credit union organized under the provisions of Title 46, R.C.S. of Texas, and which is subject to the jurisdiction of the Banking Department?"

"6. Is an officer or employee of a State agency, legislator or legislative employee required to file the sworn statement under Section 3(b) if he is the owner of a policy of insurance in a mutual life, mutual casualty or fire insurance company under the jurisdiction of the Board of Insurance Commissioners?"

Section 3(b) is not designed to require the disclosure of every financial interest or investment by the affected personnel. This is clear indicated by requiring only disclosure by officers, agents, members, or owners of designated interests. This Bill, according to Section 1, is directed only against substantial conflicts of interests in the discharge of public duties. Every financial investment in a business subject to the jurisdiction of the State regulatory agencies could, under some circumstances, cause some degree of conflict of interests, but every conflict will not be substantial. Accordingly, the dividing line between interests that are required to be disclosed by Section 3(b) and those that are not required to be disclosed is whether the financial interest is of such nature, quality, and quantum as to tend to create a substantial conflict.

The dominant relationship between the credit union and its member is that of borrower or investor, as the case may be. The dominant relationship between the owner of a mutual insurance policy and the insurance company is that of the insured and the insurer. In both cases the participation in management upon the part of most members is, as a practical matter, negligible. Members of credit unions and mutual insurance companies are not primarily interested in the management aspects, nor do they regard themselves as being the owners of interests in business entities. Such interests, per se, are not substantial enough to tend to cause a substantial conflict of interests within the meaning of the Act. This is not true of an officer or agent of such entities, or of someone who might hold a "controlling interest", but is true of the ordinary member.

One who makes deposits or borrows from a bank and one who owns stock in an insurance company is not required, per se, to file the 3(b) affidavit. For the purposes of this Act there is no justifiable distinction between the bank depositor or borrower and membership in a credit union. Nor is there a distinction between ownership of stock in a corporation and ownership of a mutual insurance company policy.

Furthermore, the use of the word, "member", is not ordinarily and usually applied in connection with a corporation. Credit unions under the jurisdiction of the Banking Commission are corporations. Most mutual insurance companies are corporations. Article 10, Section 1, V.C.S., states:

"The <u>ordinary signification</u> shall be applied to words, except words of art or words connected with a particular trade or subject matter, when they shall have the signification attached to them by experts in such art or trade with reference to subject matter."

The word, "member", is not a word of art and the ordinary meaning should be attached to it. It would be a strained interpretation to apply it to corporations. The Legislature meant to apply the word, "membership", to firms, partnerships, and other business entities or associations.

The 1957 amendment[2] to Article 1.06 of the Insurance Code is calculated to prevent substantial conflicts of interests in the State Board of Insurance. It specifically states that the ineligibility shall not extend to or apply to persons who are merely insured by insurer, which would necessarily include persons who are holders of mutual insurance policies. This statute is in pari materia to H.B. 3, and should be considered as definitive of the legislative intent. It is to be noted that the amendment to Article 1.06 sets up more rigid standards than does House Bill 3. This supports the conclusion that the legislators, in enacting House Bill 3, did not contemplate disclosure of ownership of mutual insurance policies.

The only remaining question is:

"7. Is an officer or employee of a State agency, legislator or legislative employee, required to file the sworn statement under Section 3(b) if he is an officer, agent, or member of, or owns a controlling interest in any corporation, firm, partnership, or other business entity which is under the jurisdiction of a State agency other than the Board of Insurance Commissioners, the Banking Department, the Railroad Commission, and Texas Liquor Control Board; for instance, the State Department of Health?"

The Act is clear. Section 2 states:

"In this Act unless the context otherwise requires:

. . .

"(b) 'Regulatory agency' means the Board of Insurance Commissioners, Banking Department, Railroad Commission, and Texas Liquor Control Board."

By specifically naming these agencies the Legislature excluded agencies not named. This Act provides disciplinary measures for those employees who fail to comply with Section 3(b). It should be construed in such a way that the employee would know what regulatory agencies are intended to be covered by Section 3(b). That is the purpose of the definition. To imply that other agencies than those named are included would defeat this purpose. If the Legislature desires to broaden the application it can and should do so. This question must be answered in the negative.

## SUMMARY

Within the meaning of H.B. 3 the State Bar of Texas is not a part of the Executive Department. The various River Authorities, such as the Lower Colorado River Authority, are not State agencies. The Texas Commission on Higher Education is a State agency.

An officer or employee of a State agency, legislator or legislative employee who is a minority stockholder in a corporation under the jurisdiction of a State regulatory agency is required to file the sworn statement required by Section 3(b) of H.B. 3 if he owns a controlling interest in such corporation.

An officer or employee of a State agency or legislator or legislative employee who is

simply a member of a credit union organized under the provisions of Title 46, R.C.S. of Texas, and which is subject to the jurisdiction of the Banking Department, or who is simply the owner of a policy of insurance in a mutual life, mutual casualty, or fire insurance company under the jurisdiction of the State Board of Insurance is not required to file the affidavit described in Section 3(b) of H.B. 3.

The affidavit provided by Section 3(b) of the Act must only be filed when the corporation, partnership, firm, or other business entity in question is under the jurisdiction of the regulatory agencies specifically named in Section 2(b).

Very truly yours,

WILL WILSON
Attorney General of Texas

By Wallace P. Finfrock
Wallace P. Finfrock
Assistant

WPF:lm

APPROVED:

OPINION COMMITTEE

H. Grady Chandler, Chairman

James N. Ludlum
C. K. Richards
W. V. Geppert
J. C. Davis, Jr.

REVIEWED FOR THE ATTORNEY GENERAL

BY:   Geo. P. Blackburn

1/ "The Executive Department of the State shall consist of a Governor, who shall be the Chief Executive Officer of the State, a Lieutenant Governor, Secretary of State, Comptroller of Public Accounts, Treasurer, Commissioner of the General Land Office, and Attorney General." Art. IV, Sec. 1, Texas Constitution.

2/ "No person who is a stockholder, director, officer, attorney, agent or employee of any insurance company, insurance agent, insurance broker, or insurance adjuster, or who is in any way directly or indirectly interested in any such business shall be a member of the State Board of Insurance, be Commissioner of Insurance, or be appointed to, or accept, any office or employment under said Board or Commissioner of Insurance, provided, however, that such ineligibility shall not extend or apply to persons who are merely insured by an insurer, or are merely beneficiaries of such insurance; or who, in their official capacity, are appointed as a receiver, liquidator, or conservator for an insurer." S.B. 222, Acts 1957, 55th Leg.