OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



March 14, 2001

The Honorable Ron Lewis
Chair, Committee on Energy Resources
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0354

Re: Whether the Port of Port Arthur Navigation District may adopt a policy limiting the number of years it will consent to allow an existing loading and unloading contract to automatically renew to five (RQ-0298-JC)

Dear Representative Lewis:

The Port of Port Arthur Navigation District of Jefferson County (the "Navigation District" or "District") has entered a two-year contract with a stevedoring company to load and unload cargo.[1] The contract provides that it will automatically be renewed for one-year terms if "both parties wish" the agreement to continue. Request Letter, *supra*, at 1; *see Aetna Life Ins. Co. v. Eilers*, 367 S.W.2d 732, 735 (Tex. Civ. App.–Waco 1963, writ ref'd) (describing contract that extends its term automatically as "self-operative at a predetermined point agreed upon"). The Navigation District evidently has discussed adopting a policy that would limit the number of years that the District's governing body may agree to the contract's automatic renewal to a total period of five years. *See* Request Letter, *supra*, at 1-2. At that time, we assume that, if the contract is valued at more than $25,000, the District would notify the public that it will award a new contract and invite interested parties to submit offers. If the policy you describe does not contravene any restrictions or covenants in the District's tax-exempt revenue bonds, we conclude that the Navigation District may adopt it.

As a governmental agency, *see* TEX. CONST. art. XVI, § 59(a), (b) (designating navigation districts as governmental agencies); TEX. WATER CODE ANN. § 62.102 (Vernon 1988) (same), the Navigation District has "only those powers that are expressly delegated to it by statute or that are clearly implied from its express powers." *See* Tex. Att'y Gen. Op. No. JC-0202 (2000) at 2 (citing *Tri-City Fresh Water Supply Dist. No. 2 v. Mann*, 142 S.W.2d 945, 946 (Tex. 1940)). Implied powers are "'indispensable'" to accomplishing the purposes for which the district was created; they are more than "'merely convenient'" or "'useful.'" *Id.* (quoting *Tri-City Fresh Water Supply Dist. No. 2*, 142 S.W.2d at 947). Applicable statutes define the extent of the Navigation District's express and implied powers.

---

[1] Letter from Honorable Ron Lewis, Chair, Committee on Energy Resources, House of Representatives, to Honorable John Cornyn, Attorney General of Texas (Oct. 17, 2000) (on file with Opinion Committee) [hereinafter Request Letter].

The Navigation District is subject to several "layers" of laws. First, article XVI, section 59 of the Texas Constitution authorizes the legislature to create conservation and reclamation districts as "governmental agencies and bodies politic and corporate with [the] powers of government" authorized to exercise rights, privileges, and functions to conserve and reclaim natural resources "as may be conferred by law." TEX. CONST. art. XVI, § 59(a), (b). Second, in accordance with its authority under article XVI, section 59, the legislature in 1963 adopted specific enabling laws creating the Navigation District to improve navigation; to maintain, develop, extend, and improve port facilities, wharf and dock facilities; and to develop the Port of Port Arthur. *See* Act of May 27, 1999, 76th Leg., R.S., ch. 1577, § 1, sec. 1(a), 1999 Tex. Gen. Laws 5411, 5411-12; *see also* Act of May 13, 1963, 58th Leg., R.S., ch. 197, 1963 Tex. Gen. Laws 528, 528-39 (creating District). The District has "all powers, rights, privileges[,] and functions conferred by General Law upon any district . . . created" under article XVI, section 59 of the constitution and may adopt bylaws, rules, and regulations to manage and regulate its affairs and to make contracts necessary to accomplish its purposes. Act of Mar. 21, 1979, 66th Leg., R.S., ch. 25, § 1, secs. 2(e), (f), 20, 1979 Tex. Gen. Laws 41, 41-42. Third, the District is subject to chapter 60 of the Water Code, which provides generally for navigation districts, *see* TEX. WATER CODE ANN. ch. 60 (Vernon 1988 & Supp. 2001), and to chapter 62 of the Water Code, which applies to navigation districts created under article XVI, section 59 of the Texas Constitution, *see id.* §§ 62.001(1), .021 (Vernon 1988). Certain of the District's public-works contracts are also subject to chapter 271, subchapter B of the Local Government Code, but the contract about which you ask is not a public-works contract subject to these provisions. *See* TEX. LOC. GOV'T CODE ANN. § 271.024 (Vernon 1999) (limiting competitive-bidding procedures set out in that subchapter to contracts to construct, repair, or renovate structure, road, highway, "or other improvement or addition to real property").

You state that the Navigation District has adopted the contracting requirements in chapter 60, subchapter N of the Water Code. *See* Request Letter, *supra* note 1, at 1. Section 60.401 of the Water Code, part of subchapter N, states that the subchapter applies only to a port-authority district that properly has adopted the subchapter "for a particular purchase or period or for all purchases and contracts." TEX. WATER CODE ANN. § 60.401(a), (b) (Vernon 1988). Chapter 60, subchapter N articulates noncompetitive procedures that may be used to award a contract valued at no more than $25,000 and request-for-proposal or competitive-bidding procedures for a contract valued at more than $25,000. *See id.* §§ 60.403, .406(a) (Vernon Supp. 2001). Insurance or high-technology items may be purchased using the statutory request-for-proposal procedures in section 60.405. *See id.* § 60.405 (Vernon 1988). Purchases that will be competitively bid are subject to the competitive-bidding procedures in section 60.404, concerning notice of a proposed purchase, *see id.* § 60.404 (Vernon Supp. 2001); section 60.407, providing for opening of the bids, *see id.* § 60.407 (Vernon 1988); and section 60.408, governing the contract award, *see id.* § 60.408. A contract to purchase "personal or professional services" is exempt from the requirements of sections 60.404 (containing competitive-bidding notice requirements) and 60.405 (containing request-for-proposal requirements). *See id.* §§ 60.404, .405, .412 (Vernon 1988 & Supp. 2001).

A stevedoring company has executed a contract with the Navigation District to perform loading and unloading services. *See* Request Letter, *supra* note 1, at 1. You indicate that the

primary term of the contract is limited to two years "[d]ue to certain restrictions and covenants contained in tax-exempt revenue bonds issued and sold by the" District. *Id.* The contract provides for its automatic renewal at the end of the two-year primary term "in the event both parties wish to continue" the relationship. *Id.* If the contract is automatically renewed, the contract continues in effect for an additional year. *See id.* We understand that the contract does not limit the number of times the contract may be automatically renewed. *See id.*

This office has considered various aspects of this particular contract before. Letter Opinion 97-031 concludes that the proposed contract, which we were informed was primarily for loading and unloading services, must be competitively bid if its value exceeds $25,000. *See* Tex. Att'y Gen. LO-97-031, at 2, 3. The opinion reasons that such a contract is not one for personal or professional services that is excepted from chapter 60, subchapter N's competitive-bidding requirements even though it includes incidental professional services, such as accounting. *See id.* at 2. Letter Opinion 97-059 subsequently affirmed that a contract that requires "only the provision of loading and unloading services" is not a contract for personal or professional services that is exempt from statutory competitive-bidding requirements. *See* Tex. Att'y Gen. LO-97-059, at 1. Nevertheless, Letter Opinion 97-059 continues, whether a particular contract for services that includes loading and unloading services is a contract for personal and professional services and therefore exempt from competitive-bidding requirements is a fact question that the Navigation District must resolve. *See id.* at 1-2. After Letter Opinion 97-059 was issued, you recount, the District's "Board of Commissioners made a factual determination that the services to be provided under the loading and unloading contract involved significant and varied management and marketing functions which required special knowledge and a high order of learning[,] skill[,] and intelligence and concluded that the services to be provided under the loading and unloading contract . . . constitute professional services." Request Letter, *supra* note 1, at 1. "Therefore, . . . the Port utilized the request for proposals procedures set forth in Section 60.405 of the Texas Water Code." *Id.*

We address your question—whether the Navigation District may adopt a policy under which a contract for loading and unloading services, which provides for its automatic renewal each year, may be renewed no more than five years—based upon several assumptions. We assume first that the Navigation District correctly determined that this contract for loading and unloading services is excepted from chapter 60, subchapter N's competitive-bidding requirements.[2] Because of its fact-based nature, the District's determination may be challenged only in court. *See* Tex. Att'y Gen. LO-97-059, at 1. Second, we assume that this contract properly may be awarded using the request-for-proposal procedure set forth in section 60.405 of the Water Code.[3] *See* TEX. WATER

---

[2]*But see generally* Tex. S.B. 670, 77th Leg., R.S. (2001), Tex. H.B. 1062, 77th Leg., R.S. (2001). These companion bills, which were identical when filed, would validate and confirm "in all respects" certain governmental acts or proceedings taken by a port-authority district "before March 1, 2001." Tex. S.B. 670, §§ 2, 3, 77th Leg., R.S. (2001); Tex. H.B. 1062, § 2, 3, 77th Leg., R.S. (2001).

[3]*But see generally* note 2, *supra.* To review a similar situation involving the Port of Beaumont Navigation District, compare Attorney General Opinion JC-0233:

(continued...)

CODE ANN. § 60.405(a) (Vernon 1988) (stating that "[i]nsurance or high technology items may be purchased under the procedure provided by this section."). Construing analogous statutory language, we recently have indicated that the statutory competitive-sealed-proposal procedure with which a municipality must comply may be used only to procure high-technology items or to purchase insurance. *See* Tex. Att'y Gen. Op. No. JC-0326 (2001) at 4 (suggesting that statute permitting municipality to use competitive-sealed-proposal procedure "only for high technology procurements or . . . the purchase of insurance" does not apply to advertising contract).

Nothing in the statutes either permits or prohibits the Navigation District to adopt a policy limiting the term of an automatic-renewal option. Chapter 60, subchapter N of the Water Code does not mention such a policy, even assuming that a contract for personal or professional services may be awarded under section 60.404 or 60.405. *See* TEX. WATER CODE ANN. § 60.412(a)(4) (Vernon 1988). Similarly, neither chapter 62 of the Water Code nor the District's enabling acts address the type of policy the Navigation District wishes to adopt.

In our opinion, the District's express authority to adopt rules and regulations to manage and regulate its affairs, *see* Act of Mar. 21, 1979, 66th Leg., R.S., ch. 25, § 1, secs. 2(e), 20, 1979 Tex. Gen. Laws 41, 41, 45, implies authority to adopt a policy limiting the number of times a contract may be automatically renewed. A navigation district may execute contract terms "similar to those made by citizens generally." *Cf.* Tex. Att'y Gen. Op. No. H-1025 (1977) at 2 (quoting *Ehlinger v. Clark*, 8 S.W.2d 666, 671 (Tex. 1928)) (referring to county authority to include automatic-extension provision in lease); Tex. Att'y Gen. Op. No. JM-1043 (1989) at 2 (same). Thus, a navigation district may include in a contract an option to extend the contract or to automatically renew the lease. *See* Tex. Att'y Gen. Op. Nos. JM-1043 (1989) at 3; H-1025 (1977) at 2. Conversely, a navigation district may, by regulation, limit the use of those terms, including the automatic-renewal option, by adopting a policy to limit the number of years that the District may agree to continue the contract.

Thus, the Navigation District may adopt a policy limiting the number of years it will permit a contract for loading and unloading services automatically to renew. We assume such a policy comports with any applicable restrictions and covenants contained in tax-exempt revenue bonds

---

[3](...continued)

> This office concluded in Letter Opinion 97-031 that the Port of Beaumont Navigation District must competitively bid a contract for the loading and unloading of cargo. *See* Tex. Att'y Gen. LO-97-031, at 3. The Port does not concur with the letter opinion but argues that the loading and unloading services must comply with competitive bidding requirements or proposal procedures, and therefore it sought proposals pursuant to section 60.405 of the Water Code instead of competitive bids under section 60.404. [Citation omitted.]

Tex. Att'y Gen. Op. No. JC-0233 (2000) at 1 n. 1. Because the procedural issues were "not germane" to the question presented in Attorney General Opinion JC-0233, we did not address them. *See id.* The legality of the request-for-proposal procedure used by the Port of Port Arthur Navigation District here likewise is not germane to the issue you present.

issued by the District.  You do not describe any restrictions and covenants; consequently, we cannot comment upon the impact they may have on a District policy.

### S U M M A R Y

The Port of Port Arthur Navigation District may adopt a policy limiting to five the number of years it will permit a contract for loading and unloading services automatically to renew, assuming that the policy does not contravene any restrictions or covenants in the District's tax-exempt revenue bonds.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General - Opinion Committee