OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

April 23, 2002

The Honorable Jim Solis
Chair, Economic Development Committee
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0494

Re: Whether the Gun Barrel City Economic Development Corporation may use Development Corporation Act of 1979, section 4B sales and use taxes to fund a project that does not promote business development (RQ-0462-JC)

Dear Representative Solis:

When the law requires that voters approve a tax, proceeds of the tax may only be used for the purposes approved by the voters. Under section 4B of the Development Corporation Act of 1979, article 5190.6 of the Revised Civil Statutes (the "Act"), an eligible city may collect sales and use tax, if approved by the city's voters, to be used by a city-created industrial development corporation to fund authorized projects. On May 3, 1997, the voters of Gun Barrel City (the "City") approved the adoption of a one-half percent sales and use tax "for the promotion and development of new and expanded business enterprises." On behalf of the Board of Directors of the Gun Barrel City Economic Development Corporation (the "Corporation"), you ask about its authority under section 4B(a)(2)(A) of the Act to use the sales tax proceeds to fund a project that does not promote business development.[1] Consistent with the voter-approved election proposition, the sales taxes collected in the City may be used only for the promotion and development of business enterprises. The Board may not use the sales tax proceeds to fund a project that does not promote business development.

To provide a legal context for your request, we briefly review the Act's provisions regarding approval and use of the section 4B sales taxes. The Development Corporation Act of 1979 authorizes a city, county, or district to create an industrial development corporation to finance the cost of authorized "projects" that generally promote economic development. See TEX. REV. CIV. STAT. ANN. art. 5190.6 (Vernon 1987 & Supp. 2002). In particular, section 4B of the Act authorizes an eligible city to create an industrial development corporation governed by that section, see id. § 4B(b) (Vernon Supp. 2002), and authorizes the city to levy a sales and use tax for the benefit of the corporation, but only if approved by a majority of the voters at an election called for that

---

[1]See Letter from Honorable Jim Solis, Chair, Committee on Economic Development, Texas House of Representatives, to Honorable John Cornyn, Texas Attorney General (Nov. 7, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

purpose, *see id.* § 4B(d). Other than the rate of the tax and descriptions of particular projects, section 4B does not generally specify the contents of the tax election proposition or ballot to be submitted to the voters. *See id.*; *see also id.* §§ 4B(a-3)(2) (requiring voter approval for specific venue projects "clearly described on the ballot"); (a-5) (requiring ballot proposition at election to adopt tax to clearly describe project if project involves water supply facilities or water conservation programs); (p) (requiring ballot to provide for voting for or against use of sales tax for "cleanup of contaminated property"). Upon receipt of the sales tax proceeds, the city must deliver the tax proceeds to the corporation, *see id.* § 4B(g), to be used to finance costs of authorized "projects." *See id.* § 4B(g)(1)-(2). Those "projects" include "facilities and improvements" found by the board of directors of the corporation to:

> (A)  be required or suitable for use for professional and *amateur (including children's) sports, athletic,* entertainment, tourist, convention, *and public park purposes* and events, including stadiums, ball parks, auditoriums, amphitheaters, concert halls, learning centers, parks and park facilities, open space improvements, municipal buildings, museums, exhibition facilities, and related store, restaurant, concession, and automobile parking facilities, related area transportation facilities, and related roads, streets, and water and sewer facilities, and other related improvements that enhance any of those items;

> (B)  *promote or develop new or expanded business enterprises, including a project to provide* public safety facilities, streets and roads, drainage and related improvements, demolition of existing structures, general municipally owned improvements, as well as any improvements or facilities that are related to any of those projects and *any other project that the board in its discretion determines promotes or develops new or expanded business enterprises.*

*Id.* § 4B(a)(2)(A)-(B) (emphasis added).

With this background, we turn to your question. You inform us that there is "a desire in Gun Barrel City to utilize Section 4B tax revenues to construct a youth league football field at the city park." Request Letter, *supra* note 1. Although the football field would benefit the community, "there is no discernable economic advantage associated with the project." *See id.* As we understand it, the Corporation has determined that the project would not promote economic development much less "business development," arguably a more specific subset of economic development. *See id.*; Tex. Att'y Gen. Op. No. JC-0362 (2001) at 5 (determination of whether particular project will promote economic development purposes of Act is generally a question of fact within discretion of development corporation's board of directors in the first instance). The Corporation's Board of Directors requests clarification of its project funding authority under section 4B(a)(2)(A) of the Act. Specifically, the Board asks:

> Since Section 4B[(a)](2)(A) lacks reference to job creation, expansion, retention, promotion of business and commerce, etc., and since such references are evident in similar sections, e.g., in Section 2(11)(A),[2] Section 3[3] and Section 4B[(a)](2)(B), may it be presumed that projects may be undertaken under Section 4B[(a)](2)(A) without consideration of some predictable positive economic impact?

Request Letter, *supra* note 1 (footnotes added).

Section 4B(a)(2)(A) by its terms does not require that the specific projects authorized in that section promote economic development, notwithstanding that the overarching purpose of the Act is the promotion of economic development. *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4B(a)(2)(A) (Vernon Supp. 2002); *see, e.g., id.* §§ 3 (legislative findings regarding economic development purpose and supporting measures authorized by Act); 21 (authorizing city, county, or district to utilize industrial development corporation to finance projects to promote economic development). Given the numerous and rather selective changes to the Act since it was first adopted in 1979, it is less than a coherent or consistent statute. *See generally* Tex. Att'y Gen. Op. No. JC-0118 (1999) (reviewing sections 4A and 4B provisions); 1 OFFICE OF THE TEXAS ATTORNEY GENERAL, HANDBOOK ON ECONOMIC DEVELOPMENT LAWS FOR TEXAS CITIES 2-3, 5-6 (2002) (discussing Act's legislative evolution). However, because the Corporation's authority to undertake projects is limited by the particular sales tax election proposition submitted to and approved by the City voters, we do not reach the Corporation's question whether section 4B(a)(2)(A) generally allows noneconomic development projects to resolve the question presented here.

Use of section 4B sales tax is limited not only by the statutory provisions of the Act, but also by the particular tax election authorizing the tax. Proceeds of the section 4B sales tax, of course,

---

[2]Section 2(11)(A) of the Act defines the term "[p]roject," in part, as:

> the land, buildings, equipment, [and] facilities . . . to promote new and expanded business development or found by the board of directors to be required or suitable for the promotion of development and expansion of manufacturing and industrial facilities, job creation and retention, job training. . . .
>
> Project also includes job training required or suitable for the promotion of development and expansion of business enterprises and other enterprises described by this Act, as provided in Section 38 of this Act.

TEX. REV. CIV. STAT. ANN. art. 5190.6, § 2(11)(A) (Vernon Supp. 2002).

[3]Section 3(a) sets out legislative findings and determinations generally to the effect that the welfare of the state requires as a public purpose the "promotion and development of new and expanded business enterprises and the promotion and development of job training[;] . . . that the existence, development, and expansion of business, commerce, industry," higher education, and job training are essential to the state's economic growth; and that the measures authorized by the Act promote the economic welfare of the state "by the securing and retaining of business enterprises and the resulting maintenance of a higher level of employment, economic activity, and stability[.]" *Id.* § 3(a)(1)-(4).

may be used only for the purposes authorized by the statute. *See Tri-City Fresh Water Supply Dist. v. Mann*, 142 S.W.2d 945, 948 (Tex. 1940) (taxing power may be exercised only for purposes distinctly included in constitutional or legislative authorization); *see also* Tex. Att'y Gen. Op. No. JC-0118 (1999) (section 4B sales tax proceeds may only be used for projects authorized by statute). Additionally, they may be used only for the purposes expressly represented to and approved by the voters, *i.e.*, the contract with the voters, which may be more limited than the purposes allowed by the statute. *See* Tex. Att'y Gen. Op. No. JC-0400 (2001) at 4-5 (and cases cited therein); *see also* Tex. Att'y Gen. Op. No. JC-0488 (2002) at 4. "The contract with the voters clearly includes the purposes stated in an election ordinance or order formally adopted by a governing body and the election proposition submitted to the voters." *See* Tex. Att'y Gen. Op. No. JC-0488 (2002) at 4. It may also include representations made by the governing body outside the formal election proceedings, for example, such as statements made before the election to the public regarding specific purposes for which the proceeds will or will not be used. *See id.* at 4. We assume for the purposes of this opinion that neither the governing body of the City nor of the Corporation made any representations limiting the use of the sales and use tax proceeds beyond that in the election proposition approved by the City's voters.

The election proposition presented to the City voters limited the use of the section 4B sales tax to business development purposes. On March 11, 1997, the City Council of Gun Barrel City adopted an ordinance calling a special election to be held on May 3, 1997, to allow City residents to vote on the "question of the adoption of an additional sales and use tax for the purpose of the promotion and development of new and expanded business enterprises." GUN BARREL CITY, TEX., ORDINANCE No. 1997-005 (1997). The ordinance directed the submission to the voters of the following proposition: "The adoption of an additional [one-half] of one percent sales and use tax for the promotion and development of new and expanded business enterprises." *Id.*[4] *Compare id. with* Tex. Att'y Gen. Op. No. JC-0400 (2001) at 4 (City of Sonora proposition submitted to voters: "The adoption of an additional one-half of one percent sales and use tax within the City pursuant to the provisions of Article 5190.6 . . . , with the proceeds thereof to be used and applied in the manner and to the purposes authorized by Section 4B of the Act, including but not limited to . . . ."). We understand that the sales tax revenues at issue here are collected pursuant to the May 3, 1997 election because no other sales and use tax election in the City has been called and held pursuant to the Act.

In sum, because the City's voter-approved sales tax election proposition limits their use "for the promotion and development of new and expanded business enterprises," *see* GUN BARREL CITY, TEX., ORDINANCE No. 1997-005 (1997) at 1, the Corporation's Board of Directors may use the sales tax proceeds to fund only projects that promote business development. Accordingly, we conclude that the Corporations's Board of Directors may not use the section 4B tax revenues to fund a project that does not promote business development.

---

[4]*See also* GUN BARREL CITY, TEX., ORDINANCE No. 1997-007 (1997) (canvassing special election returns and finding that the "proposition for the adoption of a Section 4B sales and use tax at the rate of one-half of one percent" submitted at the election on May 3, 1997, was passed by voters).

## S U M M A R Y

Consistent with the particular 1997 voter-approved election proposition, the sales taxes collected in Gun Barrel City under section 4B of the Development Corporation Act of 1979 may be used only for projects that promote business development. The Board of Directors of the Gun Barrel City Economic Development Corporation may not use the sales tax proceeds to fund a project that does not promote business development.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee