ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

January 25, 2011

The Honorable Jane Nelson
Chair, Committee on Health
    and Human Services
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. GA-0836

Re: Authority of the Regional Transportation
Council over transit related projects located in
Richland Hills (RQ-0901-GA)

The Honorable Todd Smith
Chair, Committee on Elections
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Dear Senator Nelson and Representative Smith:

On behalf of the City of Richland Hills (the "City"), you each pose two questions about the authority of the Regional Transportation Council over a transit station located in the City.[1] Specifically, you both ask:

> 1) Does the Regional Transportation Council have the authority to close the Trinity Railway Express train station which is inside the city limits of the City of Richland Hills?
>
> 2) Does the Regional Transportation Council have the authority to collect repayment by the City of Richland Hills for federal and local air quality funds spent on improvements to roads and sidewalks in the City of Richland Hills related to the transit station?

Nelson Request Letter at 1; *see also* Smith Request Letter at 1.

You tell us that in 1992 the citizens of the City "voted to join the Fort Worth Transportation Authority [the "Authority"] to establish public transportation" in the City and that a sales tax has

---

[1]*See* Jane Nelson Request Letter at 1 [hereinafter Nelson Request Letter]; Todd Smith Request Letter at 2 [hereinafter Smith Request Letter] (*available* at www.texasattorneygeneral.gov).

been collected in the City for that purpose. *See* Smith Request Letter at 1. You also tell us that the City has called for an election "to allow the citizens of the city to choose whether to remain in the agreement with [the Authority] or not." *Id.* You indicate that your questions are prompted to "get a clear understanding of the rights, privileges and responsibilities of all the parties involved with public transportation within the [City, including the] surface streets and rail." *Id.* at 2. Notwithstanding the fact that the City did not vote to withdraw from the Authority in the recent election, we address your questions at your ongoing request.

The Authority is a regional transportation authority under chapter 452 of the Transportation Code. *See* TEX. TRANSP. CODE ANN. §§ 452.001–.720 (West 2007 & Supp. 2010); *see also id.* §§ 452.561–.563 (West 2007) (subchapter N entitled "Subregional Board in Authority Having No Municipality with Population of More than 800,000"). You provide no information about the Regional Transportation Council ("RTC"), but briefing we received indicates that it is the policy body[2] of the North Central Texas Council of Governments ("NCTCOG").[3] *See* TEX. LOC. GOV'T CODE ANN. §§ 391.001–.015 (West 2005 & Supp. 2010) (governing regional planning commissions such as the NCTCOG). The NCTCOG is the designated Metropolitan Planning Organization ("MPO") for the Dallas-Fort Worth region. *See* 23 U.S.C. § 134 (2006 & Supp. II 2008) ("Metropolitan transportation planning"); *see also* Governor's Designation of NCTCOG as MPO for Dallas-Fort Worth (Aug. 26, 1988) (copy on file with the Opinion Committee).

At issue is a transit station located in the City that is part of the Trinity Railway Express transit system between Dallas and Fort Worth.[4] *See* RTC Brief at 1. You first ask about the power of the RTC, not the Authority, to close the station. *See* Nelson Request Letter at 1; Smith Request Letter at 1. Chapter 391 of the Local Government Code, governing regional planning commissions, contains no provision granting authority to the NCTCOG or the RTC over the transportation system or the transit station. *See generally* TEX. LOC. GOV'T CODE ANN. §§ 391.001–.015 (West 2005 & Supp. 2010) (governing regional planning commissions). Moreover, chapter 452 vests the Authority with power over operation of the transportation system and, thus, the Authority is the entity with power to determine whether to close the transit station under its mandate to cease providing transportation services in the withdrawn member. *See* TEX. TRANSP. CODE ANN. §§ 452.056(a)(1) (West Supp. 2010) (authorizing authority to operate public transportation system in the territory of

---

[2]*See* 43 TEX. ADMIN. CODE § 15.2(15) (2010) (Tex. Dep't of Transp., Definitions) (defining "Metropolitan planning organization policy board" as the "forum and committee structure (e.g., Regional Transportation Council, Steering Committee, Policy Advisory Committee) established under Section 134 of Title 23, U.S. Code, Section 5303 of Title 49, U.S. Code, and the Governor's Designation as the group responsible for giving an MPO overall transportation guidance").

[3]Brief from RTC at 1 (Aug. 4, 2010) [hereinafter RTC Brief] (copy on file with the Opinion Committee).

[4]You do not provide any information regarding the ownership of the transit station property. *See* Nelson Request Letter at 1; Smith Request Letter at 1–2. *But see* TARRANT COUNTY APPRAISAL RECORDS, Property Data Search (indicating the Fort Worth Transportation Authority owns the transit station property), *available at* http://www.tad.org/Datasearch/datasearch.cfm (last visited Jan. 21, 2011) (searching under Real Estate and giving "Fort Worth" as the owner).

the authority), 452.054(a) (West 2007) (granting authority "any power necessary or convenient" to carry out chapter 452); *see also Tri-City Fresh Water Supply Dist. No. 2 of Harris Cnty. v. Mann*, 142 S.W.2d 945, 946 (Tex. 1940) (recognizing special district's implied authority reasonably necessary to accomplish a delegated purpose); TEX. TRANSP. CODE ANN. § 452.657(a)(1) (West 2007) (providing that the Authority "shall cease providing transportation services in the withdrawn unit of election"). We therefore conclude that the RTC does not have authority to close the transit station located within the City.

You next inquire about RTC's authority to collect from the City reimbursement for federal and local air quality funds spent on improvements related to the transit station. *See* Nelson Request Letter at 1; Smith Request Letter at 1–2. Section 452.659 of the Transportation Code authorizes the executive committee of the Authority to determine the amount of the financial obligation[5] of a withdrawing city. *See* TEX. TRANSP. CODE ANN. § 452.659(d) (West 2007); *see also id.* §§ 452.001(5) (defining "executive committee" as the "authority directors who serve as the governing body of the authority"); 452.659(a) (specifying the financial obligation of the withdrawing city is "to the authority"). Neither chapter 452 nor any other Texas statute expressly grants the RTC a means of seeking reimbursement from unit of election that withdraws from a regional transportation authority. *See generally id.* §§ 452.001–.720 (West 2007 & Supp. 2010).

It has been suggested that the RTC may seek reimbursement because it provided federal funds to the City for improvements to roads and sidewalks for the Transit Station. *See* Nelson Request Letter at 1 (inquiring about federal and local air quality funds); Smith Request Letter at 1 (same). Neither you nor the parties submitting briefing in connection with this request cite to a particular federal statute or provide copies of a contract or agreement relevant to the federal funding of the transit station at issue here. Though this office does not construe contracts in attorney general opinions, we believe that RTC's right to reimbursement of federal funds, if any, may be dictated by specific terms of any agreements related to the transit station. *See* Tex. Att'y Gen. Op. No. GA-0690 (2009) at 3 (stating that this office does not construe contracts).

---

[5]Section 452.659 supplies the following formula: the "total financial obligation of a withdrawn unit of election to the authority is an amount equal to: (1) the unit's apportioned share of the authority's outstanding obligations; and (2) the amount, not computed in Subsection (a)(1), that is necessary and appropriate to allocate to the unit because of financial obligations of the authority that specifically relate to the unit." TEX. TRANSP. CODE ANN. § 452.659(a)(1)–(2) (West 2007). It further defines the authority's outstanding obligations and the unit's apportioned share of those obligations. *See id.* §§ 452.659(b) (supplying manner by which to determine "authority's outstanding obligations"), 452.659(d) (supplying manner by which to determine "unit's apportioned share").

## S U M M A R Y

Under chapter 452, Transportation Code, the Regional Transportation Council ("RTC") does not have authority to close the Trinity Railway Express transit station located within the City of Richland Hills (the "City").

Any right in the RTC to seek from the City repayment of federal funds expended in relation to the transit station would likely be determined under existing contracts or agreements governing the provision of those funds.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID J. SCHENCK
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Charlotte M. Harper
Assistant Attorney General, Opinion Committee