TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-03-00549-CV






Gary Henry and Sheree Henry; Brenda Adams-Degraffenreid; Sean Adams and


Meshanna Adams; Robert Allen; W. Marie Allen; Betty Andrews; Courtney


Armstrong and Cheri Armstrong; Yaser Ayyoub and Sanna Ayyoub;


Elizabeth Baker; Eric Bearden; et al.
, Appellants



v.


Kaufman County Development District No. 1, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT 

NO. GV300279, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING





O P I N I O N




 This case involves a dispute between Gary and Sheree Henry and other homeowners
(collectively the Homeowners) (1) and the Kaufman County Development District No. 1 (the District)
over the validity of special assessments levied by the District against the Homeowners. The District
was created under the County Development District Act (the Act) to "further[] the public purpose
of developing and diversifying the economy of this state by providing incentives for the location and
development of projects in certain counties to attract visitors and tourists." See Tex. Loc. Gov't
Code Ann. §§ 383.001, .002, .021 (West 1999). The District levied the assessments to pay for
infrastructure improvements of a residential subdivision in the District. The Homeowners appeal
the district court's summary judgment in favor of the District, ruling that its order levying the
assessments was proper and authorized by statute. Because we hold that the District did not have
the authority to levy special assessments, we reverse the district court's summary judgment and
remand this cause to the district court for further proceedings not inconsistent with this opinion.


BACKGROUND


 The Act authorizes the commissioners court of a small or medium-sized county to
create a "county development district" to provide incentives for the location and development of
projects "to attract visitors and tourists." See id. § 383.002. In 1996, a landowner in Kaufman
County filed a petition with the commissioners court seeking the creation of such a district. See id.
§§ 383.021, .022 (West 1999). The commissioners court accepted the petition and created the
District, calling for an election to confirm the creation and approve a local sales and use tax to
support it. See id. §§ 383.030, .101 (West 1999). The District's creation and the sales and use tax
were approved by a majority of the voting residents. See id. § 383.034 (West 1999).

 Included with the landowner's petition was a vaguely described project to be
undertaken by the District: "the enhancement of land, building, equipment, facilities and
improvements . . . to promote and develop new or expanded business enterprises which will attract
visitors to the District and result in employment and economic activity." The estimated cost of the
proposed project was $200,000,000, to include the construction of homes, a swim center, parks,
lakes, office buildings, schools, a shopping center, water- and sewage-treatment facilities, streets,
and a golf course. 

 In January 1999, a petition was submitted to the District by the owners of fifty percent
or more of the assessed value of the property of the District, requesting the financing of certain
services and improvements, known as the Capital Improvement Project (the Project), whose costs
were estimated at $15,000,000. The Project encompassed road improvements, soil and erosion
control, and similar infrastructure improvements for a residential subdivision located in the District. 
The District provided public notice in the Dallas Morning News of a public hearing to be held in
February 1999 to consider the advisability of the requested improvements and the possibility of
financing them with assessments. In July 1999, after public notice and the hearing, the District's
board reduced the cost of the Project to $9,000,000 and levied special assessments against certain
property in the District. The assessments were levied according to the value of the improved
property as determined by the District's board and ranged from $9,977 for a 50-foot wide lot to
$17,949 for an 80-foot wide lot. The order allowed the assessments to be paid immediately or in
annual installments until the year 2025. At that time, the assessed property contained no street
improvements or houses, but it had been platted into lots. The District filed the amount of the
assessments for every subject parcel in the Kaufman County deed records. The lots were
subsequently sold to the Homeowners, who now contest the District's authority to levy the
assessments.

 After the assessment order was entered, the District entered into a lease-purchase
agreement with the KCDD1-Fel Corporation, which agreed to lease the Project to the District and
advance the funds necessary to finance it. The District in exchange pledged the assessments it would
collect from the Homeowners as lease payments to the corporation. 

 The Homeowners filed suit against the District in Kaufman County, seeking an
injunction against the District's attempts to collect the assessments and asserting various claims,
including fraud, violation of their constitutional property rights, and intentional infliction of
emotional distress. Three days later, the District filed a suit for declaratory and injunctive relief
against the Homeowners in Travis County under chapter 1205 of the government code, seeking a
declaration that its assessments were valid and enforceable pursuant to statutory authority. See Tex.
Gov't Code Ann. § 1205.021 (West 2000) (authorizing district to bring declaratory-judgment action
to determine validity of public security and related assessment). The Travis County court abated the
action in Kaufman County and then consolidated that action with the District's declaratory-judgment
suit. 

 The District moved for summary judgment, asserting that its assessments were valid
because (1) the Act incorporated by reference the power to levy assessments contained in chapter
375 of the local government code, which deals with municipal management districts and specifically
authorizes those districts to levy special assessments; (2) the Homeowners failed to exhaust
administrative remedies before challenging the validity of the assessments; and (3) Senate Bill 1444,
passed in 2001, retroactively validated the assessments. The Homeowners filed a cross-motion for
summary judgment, asserting that the District lacked statutory authority to levy the special
assessments, that the Homeowners were not required to exhaust administrative remedies, and that
Senate Bill 1444 did not validate the assessments. The district court granted the District's motion
and denied the Homeowners' motion, declaring the assessments to be valid, binding, enforceable and
pursuant to proper statutory authority.

 In five issues, the Homeowners assert on appeal that (1) the District failed to prove
as a matter of law that it had the statutory authority to levy special assessments; (2) the District failed
to prove as a matter of law that the assessments funding the infrastructure of a residential subdivision
were for a proper and authorized project that would attract tourists; (3) there is a fact issue as to
whether the District complied with mandatory statutory procedures in levying the assessments; (4)
the Homeowners were not required to exhaust administrative remedies; and (5) the assessments were
not validated by Senate Bill 1444, as claimed by the District.


DISCUSSION


Standard of review

 The standard for reviewing a motion for summary judgment is well established: (i)
the movant for summary judgment has the burden of showing that no genuine issue of material fact
exists and that the movant is entitled to judgment as a matter of law; (ii) in deciding whether there
is a disputed material fact issue precluding summary judgment, evidence favorable to the
non-movant will be taken as true; and (iii) every reasonable inference must be indulged in favor of
the non-movant and any doubts resolved in its favor. Pustejovsky v. Rapid-Am. Corp., 35 S.W.3d
643, 645-46 (Tex. 2000); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985); Basic
Capital Mgmt. v. Dow Jones & Co., 96 S.W.3d 475, 480 (Tex. App.--Austin 2002, no pet.). The
propriety of summary judgment is a question of law; therefore, we review the trial court's decision
de novo. Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994); Texas Dep't of Ins. v.
American Home Assurance Co., 998 S.W.2d 344, 347 (Tex. App.--Austin 1999, no pet.). A court
of appeals should consider all grounds presented by the movant for summary judgment that the trial
court ruled on but may, in the interest of judicial economy, also consider other presented grounds
on which the trial court did not rule. Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 625 (Tex.
1996).


Exhaustion of administrative remedies

 The District asserts that the Homeowners may not challenge the validity of the
assessments because they failed to exhaust the administrative remedies of section 375.123 of the
local government code, which provides the procedure by which a property owner may appeal a
special assessment levied by a municipal management district. See Tex. Loc. Gov't Code Ann.
§§ 375.123, .124 (West 1999) (property owner must file notice of appeal with district's board within
thirty days after adoption of assessment and then may appeal board's decision to court). Although
the administrative remedies in section 375.123 on their face apply only to municipal management
districts, not county development districts, the District bases its argument on the premise that the Act
incorporates by reference the assessment power of municipal management districts and therefore,
by implication, incorporates the procedures for challenging an assessment. See id. §§ 375.111, .123,
.124, 383.061 (West 1999). The Homeowners counter that they were not required to exhaust
administrative remedies prior to bringing this suit because the Act did not incorporate the assessment
power, see discussion infra, and even if the Act did incorporate the power, it did not also incorporate
the procedure for challenging an assessment. See id.  More importantly, assert the Homeowners, it
is well settled that a party need not exhaust administrative remedies when the issue before the court
is a pure question of law. See Grounds v. Tolar Indep. Sch. Dist., 707 S.W.2d 889, 892 (Tex. 1986),
rev'd on other grounds, 856 S.W.2d 417 (Tex. 1993); City of Austin v. Pendergrass, 18 S.W.3d 261,
264-65 (Tex. App.--Austin 2000, no pet.).

 The sole issue presented in this declaratory-judgment action is whether the
assessments were validly levied pursuant to statutory authority. (2) This is purely a question of law,
and the answer is dispositive of that issue. Although the Homeowners assert two other reasons that
involve mixed questions of law and fact for why the assessments are invalid--that they would be
used for an unlawful purpose and that the District failed to comply with mandatory statutory
procedures in ordering their levy--the Homeowners pled them in the alternative, and we need not
reach them if we hold that the assessments are invalid as a matter of law. Furthermore, we agree
with the Homeowners that although the Act incorporates the "powers" of a municipal management
district, it does not also incorporate the "procedures" or "remedies" of chapter 375. Section 383.061
of the Act is clear: a county development district "has the powers of a municipal management
district." See id. § 383.061(b) (emphasis added). The Act does not incorporate "the procedures in
chapter 375 relating to the challenge of an assessment" or anything similar. We will not read into
the Act a provision that is not there. See In re Bell, 91 S.W.3d 784, 790 (Tex. 2002) (Courts should
not insert words into a statute except to give effect to clear legislative intent.). The Homeowners
were not required to exhaust administrative remedies prior to seeking a declaration that the
assessments were invalid for lack of statutory authority. We sustain the Homeowners' fourth issue.


Special assessments

 The Homeowners assert that the District did not have statutory authority to levy the
assessments. They argue first that the Act, which authorizes and governs county development
districts, does not itself provide any authority to levy assessments. Therefore, the only possible
authority for the assessments must derive from section 383.061(b) of the Act, which provides that
a county development district "has the powers of a municipal management district created under
Chapter 375 [of the local government code] to the extent not inconsistent with this chapter." Tex.
Loc. Gov't Code Ann. § 383.061(b). Section 375.111 provides that a municipal management district
"may levy and collect special assessments." Id. § 375.111. The Homeowners insist that this
incorporation by reference of the powers of chapter 375 does not confer on a county development
district the power to levy special assessments for two reasons: (1) the levying of a special assessment
is a function of the taxing power of a governmental unit, and such power must be "plainly and
unmistakably conferred," see State v. Houston & Tex. Cent. Ry., 209 S.W. 820, 822 (Tex. Civ.
App.--Galveston 1919, no writ) (quoting Brown v. Graham, 58 Tex. 254, 256 (1883)), and (2) the
power to levy special assessments is inconsistent with the Act.

 The Homeowners principally rely on an attorney general opinion holding that the Act
does not authorize a county development district to levy an ad valorem tax. See Op. Tex. Att'y Gen.
No. JC-0291 (2000) (hereinafter cited as AG Opinion). Although attorney general opinions are not
binding on this Court, we consider them highly persuasive authority and accordingly give them due
consideration. Hardin County Cmty. Supervision & Corr. Dep't v. Sullivan, 106 S.W.3d 186, 189-90
(Tex. App.--Austin 2003, pet. denied); Arlington Indep. Sch. Dist. v. Texas Attorney Gen., 37
S.W.3d 152, 159 (Tex. App.--Austin 2001, no pet.).

 The AG Opinion begins with a review of the Act. The statement of legislative intent
provides that the Act "furthers the public purpose of developing and diversifying the economy of this
state by providing incentives for the location and development of projects in certain counties to
attract visitors and tourists." See Tex. Loc. Gov't Code Ann. § 383.002. The legislative findings
include the following: "Small and medium-sized counties in this state . . . are at a disadvantage in
competing with counties in other states for the location and development of projects that attract
visitors." See id. § 383.003 (West 1999).

 Section 383.061 of the Act outlines the powers and duties of a county development
district. See id. § 383.061. The powers include the ability to "acquire and dispose of projects" and
"the powers of a municipal management district created under Chapter 375 to the extent not
inconsistent with this chapter." Id. "Projects," as defined under section 4B(a)(2) of the
Development Corporation Act of 1979, broadly include land, buildings, equipment, facilities, and
improvements that pertain to a multitude of purposes, including entertainment, tourism, business
enterprise, affordable housing, water-supply facilities, and water-conservation programs. Id.
§ 383.004(8); see Tex. Rev. Civ. Stat. Ann. art. 5190.6, § 4B(a)(2) (West Supp. 2004). Subchapter
E of the Act authorizes a county development district to issue bonds to defray the costs of a project,
and Subchapter F expressly authorizes a district to impose a sales and use tax if approved by a
majority of voters. See Tex. Loc. Gov't Code Ann. §§ 383.081-.084, .101 (West 1999). 

 The inquiry that served as the basis for the AG Opinion was submitted by an official
from Kaufman County in the wake of the District's order levying these assessments. While the AG
Opinion addressed a county development district's authorization to levy an ad valorem tax, in this
dispute the question has been framed in terms of the District's authority to levy a special assessment. 
But the analysis for both questions is grounded in the legal principle that a political subdivision of
a state has no inherent power to levy taxes and that such power must be expressly granted by law. 
Ripley v. Trinity River Canal & Conservancy Dist., 88 S.W.2d 752, 756 (Tex. Civ. App.--Dallas
1935, writ ref'd). The taxing power may only be exercised by a political subdivision if the power
has been expressly conferred by the constitution or legislation. Tri-City Fresh Water Supply Dist.
No. 2 v. Mann, 142 S.W.2d 945, 948 (Tex. 1940). The power to tax must be "plainly and
unmistakably conferred." See Houston & Tex. Cent. Ry., 209 S.W. at 822. "The power to levy
assessments for the construction of drains can be exercised only when granted in clear and
unmistakable terms, and statutes purporting to grant such power must be strictly construed as against
those asserting the right to exercise it." Mann, 142 S.W.2d at 948 (quoting Dallas Consol. Elec. St.
Ry. Co. v. City of Dallas, 260 S.W. 1034, 1036 (Tex. Comm'n App. 1924, judgm't adopted).

 But, insists the District, the Mann line of cases does not apply because a special
assessment is simply not a tax. For this proposition it cites City of Wichita Falls v. Williams, 26
S.W.2d 910, 911 (Tex. 1930), which noted that "the word 'taxes' . . . refers to ordinary ad valorem
taxes only and does not embrace special assessments." Williams explained the difference between
taxes--"the enforced proportional contribution of persons and property levied by authority of the
state for the support of government and for all public needs"--and special assessments--charges
imposed "upon the real or supposed benefit resulting from the improvement of the property on which
the specific charge is laid." Id. at 912 (quoting Taylor v. Boyd, 63 Tex. 533, 540-41 (1885)); see also
Harris County v. Boyd, 7 S.W. 713, 714 (Tex. 1888) ("Taxation is the enforced contribution of
persons and property 'levied by the authority of the State for the support of the government and for
all public needs.'"). We agree that special assessments, by their very nature, are to be used for a
limited, identified purpose rather than serve as general income to the government to be used "for all
public needs." Thus, we agree with the District that special assessments are not "taxes" in the strict
sense of that word.

 However, Williams relegated special assessments to the broad category of "taxation"
when it said, "[s]pecial assessments, as distinguished from other kinds of taxation . . . ." Williams,
26 S.W.2d at 911 (emphasis added). That case also recognized that "the authority for making
assessments . . . is derivable from and in exercise of the taxing power." See id. at 913 (quoting
Roundtree v. City of Galveston, 42 Tex. 612, 625 (1874)); see also Boyd, 7 S.W. at 714
("assessments . . . are made under the power to tax--are an exercise of that power"). Moreover,
Williams is inapplicable to this case because it dealt solely with the question of whether certain
constitutional provisions relating to taxation carry over to special assessments; the Court was
concerned that if "tax" as it appeared in the constitution included special assessments, "then special
assessments would be limited in amount by the very terms found in the Constitution, and the
improvement of the streets of our cities would be practically at an end." Williams, 26 S.W.2d at 913. 
This case does not turn on the question of whether taxes and special assessments are one and the
same but, rather, on whether special assessments are an exercise of the taxing power. As discussed
above, we are persuaded by the Homeowners' argument that the levying of an assessment is an
exercise of the taxing power. See Houston & Tex. Cent. Ry., 209 S.W. at 822; Maverick County
Water Control & Improvement Dist. No. 1 v. State, 456 S.W.2d 204, 206 (Tex. App.--San Antonio
1970, writ ref'd). Therefore, the power to assess must be clearly and unmistakably granted.

 Nowhere in the Act is a county development district expressly authorized to levy
assessments or ad valorem taxes. The only tax that the Act expressly authorizes a district to levy is
a sales and use tax, with limitations that are laid out in great detail. See Tex. Loc. Gov't Code Ann.
§§ 383.030, .031, .033, .101, .102-.106 (West 1999). As the AG Opinion notes, "[t]he detailed
provision in [the Act] for the sales and use tax suggests that the legislature did not intend county
development districts to wield any other taxing authority." AG Opinion at 3. The District would
derive its authority to levy assessments through section 383.061, which incorporates by reference
the "powers" of a municipal management district created under chapter 375. See Tex. Loc. Gov't
Code Ann. § 383.061. Chapter 375, subchapter E, entitled "Powers and Duties," includes the power
to levy ad valorem taxes to pay for roads. See id. § 375.091 (West 1999). Subchapter F, entitled
"Assessments," adds to those powers:


In addition to the powers provided by Subchapter E, the board of a [municipal
management] district may undertake improvement projects and services that confer
a special benefit on all or a definable part of the district . . . [and] may levy and
collect special assessments on property in that area, based on the benefit conferred.



Id. § 375.111 (emphasis added). (3)

 Despite the Act's language incorporating the "powers" of chapter 375, the AG
Opinion concluded that county development districts do not have the authority to levy ad valorem
taxes. (4) It noted that courts have insisted that the power to tax be expressly conferred and that the
power to levy ad valorem taxes was not expressly conferred upon county development districts. 
Moreover, the detailed provisions restricting the power to impose sales and use taxes suggest that
the legislature did not intend a district to "wield any other taxing authority." See AG Opinion at 3. 
The Homeowners argue that imposing a special assessment is an exercise of the taxing power, that
the incorporation by reference of the powers in chapter 375 was not sufficiently express to constitute
"clear and unmistakable terms," and that the power to levy must be construed against the District. 
See Mann, 142 S.W.2d at 947-48.

 The District rejoins that although the power to tax must be expressly conferred,
incorporation by reference is sufficient because "the adoption of an earlier statute by reference makes
it as much a part of the later act as though it had been incorporated at full length." Engel v.
Davenport, 271 U.S. 33, 38 (1926); see B-R Dredging Co. v. Rodriguez, 564 S.W.693, 696 (Tex.
1978). The District further contends that if the power to assess were not incorporated, the reference
to chapter 375 would have little or no meaning, and statutory language is presumed to have some
meaning and should be given any reasonable interpretation that will do so. See Harris County Dist.
Attorney's Office v. J.T.S., 807 S.W.2d 572, 574 (Tex. 1991).

 We conclude that the reference has meaning without incorporating the power to assess
because section 375.092 lists several other "specific powers" of a municipal management district for
which there is no comparable provision in the Act. See Tex. Loc. Gov't Code Ann. § 375.092 (West
1999). These specific powers include perpetual succession, acquiring and disposing of real and
personal property, entering into contracts with the United States and its subdivisions, and procuring
insurance as deemed advisable by the district's board. See id.

 Secondly, the Attorney General cited by analogy certain sections of chapter 376
(governing particular municipal management districts) in which the legislature has vested specific
municipal management districts with the powers of a district created under chapter 375 but also with
the express power to levy ad valorem taxes in accordance with chapter 375, concluding that "[i]f the
legislature had intended to vest county development districts with the [same] authority . . . it would
have done so expressly, as it did in [those sections]." See AG Opinion at 4. The Homeowners cite
these same sections of the local government code, including section 376.012, which provides: "(a)
The [Houston Downtown Management D]istrict has . . . (2) the rights, powers, privileges, authority,
and functions of a district created under Chapter 375 . . . [and] (5) the power to impose ad valorem
taxes, assessments, or impact fees in accordance with Chapter 375 to provide improvements and
services for a project or activity the district is authorized to acquire, construct, improve, or provide." 
See Tex. Loc. Gov't Code Ann. § 376.012 (West 1999); see also id. §§ 376.052, .090, .122, .221,
(West 1999). The Homeowners note that if the sections' broad incorporation of the powers of
chapter 375 included the power to assess, it would have been unnecessary to state these powers
again, individually. If the incorporation language referencing chapter 376 included the powers to
levy assessments or ad valorem taxes, the subsection explicitly allowing districts to exercise those
powers would be redundant and mere surplusage. A statutory construction that creates a redundancy
is to be avoided. See Larry Koch, Inc. v. Tex. Natural Res. Conservation Comm'n, 52 S.W.3d 833,
837-38 (Tex. App.--Austin 2001, pet. denied). Section 376.012 and the other sections referenced
above illustrate that the legislature specifically and expressly grants the power of taxation when it
intends to do so.

 The District, on the other hand, urges that when the legislature uses a general
incorporation of powers but intends to exclude taxing authority, it specifically does so, citing several
bills with language such as: "The [Salt Fork Water Quality D]istrict has all of the rights, privileges,
powers, and duties provided by the general laws of this state . . . applicable to special utility districts
. . . except that the district may not levy or collect taxes." See Act of Apr. 22, 1999, 76th Leg., R.S.,
ch. 1139, § 6(b), 1999 Tex. Gen. Laws 4033, 4034 (emphasis added); see also Act of May 29, 1997,
75th Leg., R.S., ch. 1066, § 5, 1997 Tex. Gen. Laws 4059, 4059 (Guadalupe County Groundwater
Conservation District has "all of the rights, powers, privileges, authority, functions, and duties
provided by the general laws of this state, including Chapters 36 and 49, Water Code . . . [but] may
not impose a tax or fee"); Act of May 19, 1997, 75th Leg., R.S., ch. 589, § 6, 1997 Tex. Gen. Laws
2054, 2059 (Chambers County-Cedar Bayou Navigation District has all the powers of districts
created under chapters 60,62, and 63 of the water code but does not have the power to levy ad
valorem taxes unless they have been approved by a majority of voters.). Because we must narrowly
construe the grant of taxing power, we resolve this dispute in favor of the Homeowners' position. 
Moreover, we hold that the power to make special assessments is "inconsistent with" the Act, as
discussed below.

 The Homeowners note that if the incorporation by reference in section 383.061
broadly covered every conceivable power appearing in chapter 375, it would also incorporate the
power to issue bonds appearing in section 375.201. See Tex. Loc. Gov't Code Ann. § 375.201 (West
1999). However, the Act expressly grants a county development district the authority to issue bonds,
but specifically incorporates sections 375.201 through 375.208, concerning the details of bond
requirements, pledges, and refunds. See id. §§ 375.201-.208, 383.081 (West 1999). Again, the
specific inclusion in the Act of the authority to issue bonds would be redundant if the "powers"
incorporated earlier in the chapter already included that power. Such redundancy is an indication
that we best fulfill legislative intent by narrowly construing the "powers of a municipal management
district" incorporated by reference in section 383.061.

 Finally, section 383.061(b) confers on county development districts "the powers of
a municipal management district created under Chapter 375 to the extent not inconsistent with this
chapter." See id. § 383.061(b) (emphasis added). The Homeowners argue that the power to assess
is inconsistent with the Act. The purpose of the Act is to "develop[] and diversify[] the economy
of this state by providing incentives for the location and development of projects in certain counties
to attract visitors and tourists" because small and medium-sized counties are "at a disadvantage in
competing with counties in other states for the location and development of projects that attract
visitors." See id. § 383.002, .003 (emphasis added). Clearly, the purpose of a county development
district is to undertake projects that will attract tourists and visitors so that the economy will benefit. 
Projects undertaken to attract tourists and visitors are the type of projects authorized and
countenanced by the Act, and the power to undertake such projects is specifically granted to county
development districts. See id. § 383.061 ("district may acquire and dispose of projects"). Projects
undertaken for other purposes would be, therefore, inconsistent with the chapter. Chapter 375 grants
municipal management districts the power to undertake improvement projects and services that
confer a special benefit on all or part of the district, and secondarily the power to levy assessments
for such projects. See id. § 375.111. Because chapter 375 confers the power to assess for projects
that are not within the scope of a county development district, that power is inconsistent with the
Act. Furthermore, we agree with the Attorney General's conclusion that the Act's detailed
provisions for sales and use taxes reveal a legislative intent that county development districts not
"wield any other taxing authority." See AG Opinion at 3. Inferring by reference a power to tax or
levy assessments would interfere with the intentional and detailed taxation scheme set forth in the
Act.

 Because the power to levy assessments is not unmistakably conferred upon county
development districts and because the power to levy assessments for projects that confer a special
benefit could be inconsistent with the purposes of the Act, we hold that the District did not have
statutory authority to levy the assessments. We sustain the Homeowners' first issue. (5)

Senate Bill 1444

 The trial court noted the ground on which it granted summary judgment for the
District--that it had statutory authority to levy the assessments under section 383.061--and therefore
did not rule on the District's alternate ground--that Senate Bill 1444 retroactively validated the
assessments. However, we proceed to a discussion of this issue in the interest of judicial economy. 
See Cates, 927 S.W.2d at 625. One of the District's arguments at district court was that Senate Bill
1444, adopted by the legislature in 2001, retroactively validated the assessments. See Act of May
26, 2001, 77th Leg., R.S., ch. 1423, § 42, 2001 Tex. Gen. Laws 5069, 5079 (validating and
confirming acts of water districts taken within two years prior to act's effective date of June 17,
2001). The Homeowners retort that the act applies only to "conservation and reclamation districts"
and not to county development districts. The District rejoins that the phrase "conservation and
reclamation districts" includes county development districts because the act applies to "conservation
and reclamation district[s] created under Section 52, Article III, and Section 59, Article XVI, Texas
Constitution," and that county development districts "serve the purpose of Section 59, Article XVI,
and Section 52, Article III, Texas Constitution." See id. (emphasis added); Tex. Loc. Gov't Code
Ann. § 383.003(c).

 The first constitutional provision cited in Senate Bill 1444 is broad and, on its own,
could authorize various types of districts:


Under legislative provision, any county . . . may issue bonds or otherwise lend its
credit . . . and levy and collect taxes to pay the interest thereon . . . for the following
purposes[: to improve rivers, creeks, and streams and construct and maintain pools,
lakes, and reservoirs for irrigation and navigation purposes and to construct,
maintain, and operate roads and turnpikes].



Tex. Const. art. 3, § 52(b). The second provision speaks directly to a particular kind of district but
also about the general public interest in conserving and developing the state's natural resources. It
declares, "the conservation and development of all of the natural resources of this State . . . [are]
public rights and duties; and the Legislature shall pass all such laws as may be appropriate thereto"
and "[t]here may be created . . . conservation and reclamation districts" to accomplish the purposes
of the amendment. Id. art. 16, § 59(a), (b). Thus, a "conservation and reclamation district created
under" these two constitutional provisions must be a conservation and reclamation district that in
some way conserves or develops natural resources while also improving or constructing waterways
or roads. On the other hand, the legislative findings supporting the Act, which authorizes the
creation of county development districts, state: 


The creation of development districts is essential to the accomplishment of Section
52-a, Article III, Texas Constitution [legislature may provide for programs that
further the purpose of development and diversification of the state's economy], and
to the accomplishment of the other public purposes stated in this chapter [developing
and diversifying the economy of the state by providing incentives for projects that
will attract visitors and tourists] and further serves the purpose of Section 59, Article
XVI, and Section 52, Article III, Texas Constitution.



Tex. Loc. Gov't Code Ann. § 383.003 (emphasis added).

 Although a county development district may incidentally or further serve the public
purpose of improving or constructing waterways or roads or conserving and developing natural
resources, such overlap in purpose does not transform a county development district into a kind of
district that it is not. County development districts are created under the Act; they are not created
under section 52, article 3 and section 59, article 16 of the constitution just because their creation
furthers the purpose of those provisions. Although some of the same constitutional language
provides the impetus for the creation of two different kinds of districts--county development versus
conservation and reclamation--this does not mean that the districts are functionally equivalent. 
County development districts derive from a section of the constitution that specifically allows for
their creation to support economic development. No part of the Act speaks to the purpose of
conserving or reclaiming water and other resources--although a project of a county development
district that happens to conserve or develop natural resources would certainly not be prohibited. 
Thus, because the legislation refers by name to a particular type of district created under particular
constitutional provisions, it cannot include a different type of district created under a separate statute
and pursuant to a different constitutional provision. Although one district may be "created under"
a certain constitutional provision, while another district "further serves the purpose" of that same
constitutional provision, they remain distinct.

 Furthermore, the title of Senate Bill 1444 reveals an intent that it apply only to water
districts: "An Act relating to the general powers and authority of water districts." See Act of May
26, 2001, 77th Leg., R.S., ch. 1423, 2001 Tex. Gen. Laws 5069. Bills cannot contain more than one
subject, and their titles shall give the public reasonable notice of that subject. See Tex. Const. art.
III, § 35(a), (b). Although the District notes that no act of the legislature may be held void for a
deficiency in title, Tex. Const. art. III, § 35(b), (c), Ford Motor Co. v. Sheldon, 22 S.W.3d 444, 452
(Tex. 2000), here the question is not whether Senate Bill 1444 is void, but whether it applies to
county development districts. Because the legislature is presumed to have intended compliance with
the constitution, see Brady v. Fourteenth Court of Appeals, 795 S.W.2d 712, 715 (Tex. 1990), we
hold that Senate Bill 1444 does not apply to county development districts, but only to water districts,
specifically conservation and reclamation districts. Therefore, Senate Bill 1444 did not retroactively
validate the assessments levied here. We sustain the Homeowners' fifth issue and hold that the
assessments are invalid because they were neither authorized by incorporation nor retroactively
validated. The trial court, therefore, erred in granting summary judgment for the District.


CONCLUSION


 The Homeowners were not required to exhaust administrative remedies because the
issue before the trial court was purely a question of law and because the Act did not incorporate the
procedures of chapter 375. The District did not have statutory authority to levy special assessments
against the Homeowners under the incorporation by reference in section 383.061 of the powers of
chapter 375 because the special-assessment power is not unmistakably conferred and is inconsistent
with the Act. Likewise, Senate Bill 1444, passed in 2001, did not retroactively validate the District's
special assessments because the bill applied only to conservation and reclamation districts, not
county development districts. The trial court, therefore, erred in granting summary judgment in
favor of the District and against the Homeowners. We hold that the Homeowners were entitled to
summary judgment in their favor that the order levying the assessments was invalid. However,
because the trial court's order ruled on other issues not before us on appeal, (6) we remand this cause
for further proceedings not inconsistent with this opinion.



 

 Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Reversed and Remanded

Filed: March 18, 2004

1. The appendix to this opinion lists the appellants individually.
2. Although the Homeowners' petition, originally filed in Kaufman County and consolidated
into the District's declaratory-judgment action in Travis County, alleged several causes of action
besides those involving pure questions of law, including fraud and intentional infliction of emotional
distress, that cause was severed from the present cause after the Travis County district court granted
the District's summary-judgment motion on the issue of the assessments' validity. Thus, the sole
issue on appeal concerns the validity of the assessments, not any of the Homeowners' factually based
claims.
3. The Homeowners assert that only subchapter E, and not subchapter F, is incorporated
because the title of subchapter E is "Powers and Duties," while the title of subchapter F is
"Assessments." We disagree. It is the "powers" of a "municipal management district" created under
chapter 375 that are incorporated, not the powers of "subchapter E." Thus, any power relating to a
municipal management district appearing anywhere in the chapter could reasonably be incorporated,
based solely on the first part of the text of section 383.061, providing that a county development
district has the powers of a municipal management district. However, as the text indicates, there are
other considerations besides merely the initial text of section 383.061.
4. County development districts "are separate quasi-governmental authorities, which, much
like municipal utility or water conservation districts, are created by election, are governed by a board,
and have the ability to issue bonds, but with authority to levy sales and use taxes instead of ad
valorem taxes." See R. Alan Haywood & David Hartman, Legal Basics for Development
Agreements, 32 Tex. Tech L. Rev. 955, 958 n.23 (2001) (emphasis added).
5. Because we conclude that the assessments were not authorized by the Act as a matter of
law, we need not reach the Homeowners' second and third issues--whether the assessments were
for an authorized purpose and whether the District complied with mandatory procedures in ordering
the levy.
6. The trial court's order also declared that the lease-purchase agreement and its subsequent
amendment, the payments under which were to be made from the assessments, were valid and
pursuant to proper statutory authority. The Homeowners have not asserted any issues with respect
to this agreement on appeal and have not asked this Court to render summary judgment in their
favor.